(No. 79589.—

KAREN CONNICK *et al.,* Appellees, v. SUZUKI MOTOR COMPANY, LTD., *et al.,* Appellants.

*Opinion filed October 18, 1996.—Rehearing denied February 3, 1997.*

484

HARRISON, J., concurring in part and dissenting in part.
McMORROW, J., joined by FREEMAN, J., concurring in part
and dissenting in part.

Aimee B. Anderson, of Skadden, Arps, Slate, Meagher & Flom, Michael W. Davis, Gene C. Schaerr, Rex E. Lee, Carter G. Phillips and George C. Kokkines, of Sidley & Austin, and Debra K. Marcus, of Pappas, Power & Marcus, all of Chicago, for appellants.

Robert A. Holstein, Aron D. Robinson and C. Corey S. Berman, of Holstein, Mack & Klein, Burton I. Weinstein and John R. Malkinson, of Baskin, Server, Berke & Weinstein, all of Chicago, and Robert Swift and Martin D'Urso, of Kohn, Nast & Graf, P.C., of Philadelphia, Pennsylvania, for appellees.

Louis A. Lehr, Jr., Arthur L. Klein and Kurt J. Heinz, of Arnstein & Lehr, of Chicago (Hugh F. Young, Jr., of Reston, Virginia, of counsel), for amicus curiae Product Liability Advisory Council, Inc.

Robert D. Steere and Mark S. Killion, both of Springfield, for amici curiae Illinois State Chamber of Commerce and the Illinois Manufacturers' Association.

JUSTICE HEIPLE delivered the opinion of the court:

Plaintiffs, each of whom had purchased a new Suzuki Samurai sport utility vehicle, filed a class action lawsuit in the circuit court of Cook County against

defendants Suzuki Motor Company and American Suzuki Motor Corporation (hereinafter referred to collectively as Suzuki). Plaintiffs alleged that the Samurai was unsafe due to its excessive rollover risk and sought damages from Suzuki for breach of warranty, common law fraud, and violation of the Illinois and Pennsylvania consumer fraud statutes. The circuit court dismissed the entire complaint for failure to state a claim for which relief could be granted. The appellate court affirmed in part and reversed in part (No. 1—94—1275 (unpublished order under Supreme Court Rule 23)), reinstating the counts alleging breach of express and implied warranty under the Uniform Commercial Code (UCC) (810 ILCS 5/1—101 (West 1994)) and the count alleging violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (Illinois Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 1994)). The appellate court affirmed the dismissal of the remaining counts. We allowed Suzuki's petition for leave to appeal (155 Ill. 2d R. 315) and, for the reasons that follow, we reverse the appellate court's decision to reinstate the UCC warranty counts, affirm the dismissal of the common law fraud count, and affirm the reinstatement of the Illinois consumer fraud count.

## FACTS

The named plaintiffs of this class action, residents of Illinois, Pennsylvania and New Jersey, each purchased a new Suzuki Samurai from an authorized Suzuki dealer. Some time after their purchases, Consumers Union, a consumer watchdog organization, gave the Samurai a "not acceptable" rating. According to Consumers Union, the Samurai was unsafe because it had an excessive risk of rolling over during sharp turns and accident avoidance maneuvers. Subsequently, plaintiffs filed the instant complaint against Suzuki. The class action, filed on behalf of all persons in the

United States who purchased or leased a Samurai from Suzuki or an authorized Suzuki dealer, alleged that the Samurai's risk of rollover was due to a defect in either design or production. Significantly, plaintiffs did not allege that they had ever suffered a rollover accident in a Samurai. Rather, they sought compensation for the diminution in the vehicles' resale value due to the perceived safety risk.

Plaintiffs filed an original complaint and three amended complaints in the circuit court of Cook County. The circuit court, upon Suzuki's successive section 2—615 motions (735 ILCS 5/2—615 (West 1994)), dismissed each of the complaints for failure to state a claim upon which relief may be granted. This appeal arises from the dismissal of the third amended complaint, which contained counts alleging breach of express and implied warranties, violation of consumer fraud statutes, and common law fraud.

On appeal, the appellate court first applied conflict of law principles to determine which law applied to the plaintiffs from Illinois, Pennsylvania and New Jersey. Using the most significant relationship test, the court found that Pennsylvania law applied to the claims of the Pennsylvania plaintiffs, and that Illinois law applied to the plaintiffs from Illinois and New Jersey.

The appellate court reinstated the express warranty count, finding that various statements of Suzuki could have been a "basis of the bargain." The court then affirmed the dismissal of the implied warranty count under Illinois law because the complaint failed to sufficiently allege facts constituting privity between plaintiffs and Suzuki. Observing that Pennsylvania law does not require privity for an action for breach of implied warranty, the court nevertheless held that the count based on breach of the implied warranty of fitness for a particular purpose was properly dismissed under

Pennsylvania law because the complaint did not allege how the plaintiffs relied on Suzuki's skill or expertise in choosing to purchase a Samurai. In respect to the count alleging breach of the implied warranty of merchantability under Pennsylvania law, the appellate court found that the excessive safety risk made the vehicle unfit for its ordinary use and reinstated this count.

The appellate court next addressed plaintiffs' allegations of fraud. The court reinstated the Illinois consumer fraud counts, though it did rule that the consumer fraud count could not be based on certain statements by Suzuki that it deemed mere "puffery." In addition, the appellate court found that the complaint failed to state a claim under the Pennsylvania consumer fraud statute because it did not allege that the plaintiffs purchased or leased the Samurai "primarily for personal, family or household" use, as required by statute. 73 Pa. Cons. Stat. § 201—9.2(a) (1993).

The appellate court affirmed the dismissal of all common law fraud counts, under both Pennsylvania and Illinois law, finding that most of the allegedly fraudulent statements were not pled with sufficient specificity and particularity. The court additionally ruled that while the statements made by local Suzuki dealers were alleged with sufficient specificity and particularity, the complaint failed to adequately plead an agency relationship between Suzuki and the local dealers and thus the statements could not be attributed to Suzuki.

## ANALYSIS

When the legal sufficiency of a complaint is challenged by a section 2—615 motion to dismiss, all well-pleaded facts in the complaint are taken as true and a reviewing court must determine whether the allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted.

*DiBenedetto v. Flora Township*, 153 Ill. 2d 66, 69-70
(1992). Since plaintiffs chose to amend each previously
dismissed complaint, any error regarding their dismissal
is waived and we consider only the sufficiency of the
third and final amended complaint. *Foxcroft Townhome
Owners Ass'n v. Hoffman Rosner Corp.*, 96 Ill. 2d 150,
155 (1983). In this appeal we thus address whether
plaintiffs' third amended complaint adequately stated:
(1) a claim for UCC breach of express or implied war-
ranty under Illinois or Pennsylvania law; (2) a claim of
common law fraud under Illinois or Pennsylvania law;
and (3) a claim under the Illinois Consumer Fraud Act.
Neither party has appealed the appellate court's deter-
mination of the applicable law or the appellate court's
decision to affirm the dismissal of the Pennsylvania
consumer fraud count. Therefore, those issues are
waived. 155 Ill. 2d R. 341(e)(7); *Meyers v. Kissner*, 149 Ill.
2d 1, 8 (1992).

In applying Pennsylvania law to the UCC breach of
warranty count, we will cite to Pennsylvania's interpre-
tation of the UCC wherever possible. However, Pennsyl-
vania courts have not ruled on some of the UCC section
2—607 issues raised in this appeal. Section 1—102 of
the UCC states that one of the underlying purposes and
policies of the Act is "to make uniform the law among
the various jurisdictions." 810 ILCS 5/1—102(2)(c) (West
1994); 13 Pa. Cons. Stat. § 1102(2)(c) (1984). In keeping
with this policy, both Illinois and Pennsylvania have
primarily followed the majority interpretation of the
UCC. See, *e.g., Collins Co. v. Carboline Co.*, 125 Ill. 2d
498, 508 (1988); *Cucchi v. Rollins Protective Services Co.*,
377 Pa. Super. 9, 546 A.2d 1131 (1988). We will accord-
ingly rely on Illinois decisions consistent with majority
UCC interpretations where Pennsylvania courts have
remained silent respecting section 2—607.

I. Breach of Warranty
Suzuki argues that plaintiffs cannot recover for a

breach of warranty under the UCC because the complaint did not adequately allege that plaintiffs notified Suzuki of the breach as required by article II, section 2—607, of the Uniform Commercial Code. 810 ILCS 5/2—607(3)(a) (West 1994); 13 Pa. Cons. Stat. § 2607 (1984). Plaintiffs counter that they were excused from giving direct notice of breach of warranty because Suzuki had actual knowledge of the breach and because notice was given by the filing of plaintiffs' breach of warranty complaint.

Section 2—607 of the UCC mandates that a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 ILCS 5/2—607(3)(a) (West 1994); 13 Pa. Cons. Stat. § 2607 (1984). A notification of breach of warranty is sufficient if it lets the seller know that the particular "transaction is still troublesome and must be watched." 810 ILCS Ann. 5/2—607, Uniform Commercial Code Comment 4 (Smith-Hurd 1993); 13 Pa. Cons. Stat. § 2607, Uniform Commercial Code Comment 4 (1984).

In general, buyers such as the instant plaintiffs must directly notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty. See 810 ILCS 5/1—201(26) (West 1994); 13 Pa. Cons. Stat. § 1201(26) (1984). There are instances, however, when a buyer can fulfill the notice requirement without giving direct notice to the seller. Direct notice is not required when (1) the seller has actual knowledge of the defect of the particular product (*Malawy v. Richards Manufacturing Co.*, 150 Ill. App. 3d 549 (1986)); or (2) the seller is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of UCC warranty (*Perona v. Volkswagen of America, Inc.*, 276 Ill. App. 3d 609 (1995)). Plaintiffs argue that they properly alleged notice under either of

these two exceptions. In their complaint, plaintiffs alleged:

> "Any notice of breach of warranty that may have been required was provided to defendants or excused by each of the following separately and cumulatively:
>> a. The June 2, 1988 Consumers Union report of the Samurai's 'not acceptable' rating;
>> b. The June, 1988 investigation by seven states' attorneys general resulting in defendants' agreement as set forth in paragraphs 34-36 above;
>> c. The commencement of the Pennsylvania action; and
>> d. The commencement of this action."

We first consider plaintiffs' contention that they were excused from giving direct notice of the breach of warranty because Suzuki had actual knowledge of the Samurai's alleged safety risks. It is uncontroverted that Suzuki was aware of the safety concerns regarding the Samurai. Suzuki knew of the unfavorable report about the Samurai issued by Consumers Union, as evidenced by its attempts to counter that report with its own publicity. Moreover, Suzuki entered settlement agreements with several states following attorney general investigations of the Samurai's safety risks.

However, Suzuki's generalized knowledge about the safety concerns of third parties is insufficient to fulfill plaintiffs' UCC notice requirement. While it is unnecessary to list specific claims of breach of warranty in giving notice under section 2—607 (810 ILCS Ann. 5/2—607, Uniform Commercial Code Comment 4 (Smith-Hurd 1993); 13 Pa. Cons. Stat. § 2607, Uniform Commercial Code Comment 4 (1984)), it is essential that the seller be notified that *this particular transaction* is "troublesome and must be watched." See, *e.g., Malawy*, 150 Ill. App. 3d 549. As Judge Learned Hand stated regarding section 2—607's predecessor:

> "The notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not

better than, the buyer, but of *buyer's claim* that they constitute a breach." (Emphasis added.) *American Manufacturing Co. v. United States Shipping Board Emergency Fleet Corp.*, 7 F.2d 565, 566 (2d Cir. 1925). Thus, even if a manufacturer is aware of problems with a particular product line, the notice requirement of section 2—607 is satisfied only where the manufacturer is somehow apprised of the trouble with the particular product purchased by a particular buyer. See *Malawy*, 150 Ill. App. 3d 549 (actual knowledge satisfied notice requirement where seller hospital removed defective medical device from plaintiff); *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill. App. 3d 1068 (1982) (actual knowledge satisfied notice requirement where seller's employee visited plaintiff to "get to the bottom of why" the product was malfunctioning); *Overland Bond & Investment Corp. v. Howard*, 9 Ill. App. 3d 348 (1972) (actual knowledge satisfied notice requirement where the car was towed to the seller's auto dealership and seller's employees were told that the car needed major repairs).

Plaintiffs' complaint alleged that Suzuki received notice of the Samurai's safety problems through information received from newspapers, magazines, and various third parties, all of which was generalized information concerning the Samurai product line. The complaint does not allege that Suzuki had actual knowledge of the alleged breach of the particular products purchased by the named plaintiffs in this lawsuit. Thus, plaintiffs' allegation of actual knowledge was insufficient to allege notice.

We next address plaintiffs' contention that Suzuki was deemed to be notified of the breach of warranty upon the filing of plaintiffs' complaint. Initially, we note that, in determining whether notice of breach of warranty is adequate under the UCC, courts divide plaintiffs into three categories: (1) merchant buyers (see *Board of*

*Education v. A, C, & S, Inc.*, 131 Ill. 2d 428 (1989)); (2) consumer buyers who did not suffer personal injuries (see *Perona*, 276 Ill. App. 3d 609); and (3) consumer buyers who did suffer personal injuries (see *Goldstein v. G.D. Searle & Co.*, 62 Ill. App. 3d 344 (1978); *Bednarski v. Hideout Homes & Realty, Inc.*, 709 F. Supp. 90 (M.D. Pa. 1988)). Only a consumer plaintiff who suffers a personal injury may satisfy the section 2—607 notice requirement by filing a complaint stating a breach of warranty action against the seller. Accord *Goldstein*, 62 Ill. App. 3d 344; *Bednarski*, 709 F. Supp. 90. The reason for this distinction is that where the breach has not resulted in personal injury, the UCC indicates a preference that the breach be cured without a lawsuit. Since the instant plaintiffs did not allege that they suffered any personal injuries as a result of the Samurai's alleged rollover risk, the section 2—607 notice requirement was not fulfilled by filing a breach of warranty complaint. *Perona*, 276 Ill. App. 3d 609.

Since plaintiffs failed to allege direct notice to Suzuki and since plaintiffs may not rely upon either exception to the direct notice requirement, plaintiffs' complaint did not satisfy the section 2—607 notice requirement. That failure to allege sufficient notice is fatal to plaintiffs' breach of warranty claims. 810 ILCS 5/2—607(3) (West 1994); 13 Pa. Cons. Stat. § 2607 (1984); *Board of Education*, 131 Ill. 2d at 462-63; *Williams v. West Penn Power Co.*, 313 Pa. Super. 461, 460 A.2d 278 (1983). Thus, we reverse the appellate court's finding that plaintiffs adequately pled notice and hold that the breach of warranty counts in plaintiffs' complaint were properly dismissed by the circuit court.

### II. Fraud

We next consider the appellate court's rulings regarding the fraud counts in plaintiffs' complaint. In the complaint, plaintiffs contend that Suzuki committed

common law fraud and statutory consumer fraud by: (1) selling the Samurai to consumers; (2) placing advertisements in magazines and sales brochures; (3) providing driving guidelines in manuals accompanying each Samurai; (4) issuing press releases responding to reports that the Samurai was unsafe; (5) making statements through local Suzuki dealers; and (6) concealing material facts regarding the Samurai's safety risks. The circuit court dismissed the common law fraud counts and the appellate court affirmed, finding that the complaint lacked sufficient specificity and particularity. The appellate court likewise affirmed the dismissal of the Pennsylvania consumer fraud count because the complaint failed to allege that the Samurai was purchased "primarily for personal, family or household purposes," as required by the Pennsylvania statute. 73 Pa. Cons. Stat. § 201—9.2(a) (1993). However, the appellate court found that plaintiffs' complaint stated a cause of action under the Illinois Consumer Fraud Act.

### A. *Common Law Fraud*

### 1. Fraudulent Misrepresentation

Suzuki argues that the plaintiffs' common law fraud counts based on specific representations were properly dismissed because the complaint lacked both particularity and specificity. We agree.

The elements of common law fraud are: (1) a false statement of material fact; (2) defendant's knowledge that the statement was false; (3) defendant's intent that the statement induce the plaintiff to act; (4) plaintiff's reliance upon the truth of the statement; and (5) plaintiff's damages resulting from reliance on the statement. *Board of Education*, 131 Ill. 2d at 452; *Gibbs v. Ernst*, 538 Pa. 193, 210, 647 A.2d 882, 889 (1994). A successful common law fraud complaint must allege, with specificity and particularity, facts from which fraud is

the necessary or probable inference, including what misrepresentations were made, when they were made, who made the misrepresentations and to whom they were made. *Board of Education*, 131 Ill. 2d at 457; Pa. R. Civ. P. 1019(b); *Martin v. Lancaster Battery Co.*, 530 Pa. 11, 18, 606 A.2d 444, 448 (1992).

We first address plaintiffs' allegations that Suzuki made fraudulent misrepresentations in magazine advertisements, sales brochures, new car manuals, and publicity issued in response to reports that the Samurai was unsafe. These allegations are inadequate to plead fraud because the complaint fails to state which, if any, of the plaintiffs heard these representations and relied on them. These allegations were not pled with specificity and particularity. *Board of Education*, 131 Ill. 2d at 457; Pa. R. Civ. P. 1019(b); *Martin v. Lancaster Battery Co.*, 530 Pa. 11, 18, 606 A.2d 444, 448 (1992). Thus, the appellate court did not err in affirming the circuit court's dismissal of the counts in fraudulent misrepresentation based on magazine advertisements, sales brochures, new car manuals, and publicity released by Suzuki.

We next address plaintiffs' allegations that statements made by salesmen at local Suzuki dealers constituted fraud by Suzuki. These statements were alleged with sufficient specificity in that the complaint set forth what the statement was, when it was made, who made it, and to whom it was made. *Board of Education*, 131 Ill. 2d at 457; Pa. R. Civ. P. 1019(b); *Martin*, 530 Pa. at 18-19, 606 A.2d at 448. Plaintiffs' complaint would therefore adequately state a claim for common law fraud if these statements were sufficiently alleged to have been made by Suzuki. However, the statements were not made by Suzuki but by Suzuki dealers and therefore cannot be the basis of a common law fraud count against Suzuki unless plaintiffs have adequately alleged that

the dealers were the agents of Suzuki. A complaint relying on agency must plead facts which, if proved, could establish the existence of an agency relationship. It is insufficient to merely plead the legal conclusion of agency. *Knapp v. Hill*, 276 Ill. App. 3d 376, 382 (1995); *Clayton v. McCullough*, 448 Pa. Super. 126, 132, 670 A.2d 710, 713 (1996).

Plaintiffs, in their complaint, alleged that they "purchased their vehicles from authorized Suzuki dealers, who were agents of defendants," and further alleged that certain named plaintiffs "understood" the local Suzuki dealers to be agents of Suzuki. Such allegations alone are mere legal conclusions and thus insufficient to plead agency because they contain no facts to support a finding that the local Suzuki dealers had actual or apparent authority to act on Suzuki's behalf. See *Washington v. Courtesy Motor Sales, Inc.*, 48 Ill. App. 2d 380, 383 (1964) ("the term 'Authorized *** Dealer' is in the nature of a trade-mark sign, which is used by independent dealers [citation] and means nothing more than a dealer who sells [those] products").

First, we note that the complaint is devoid of any facts to support actual agency authority, either express or implied (see *Progress Printing Corp. v. Jane Byrne Political Committee*, 235 Ill. App. 3d 292, 308 (1992); *Reifsnyder v. Dougherty*, 301 Pa. 328, 152 A.2d 98 (1930)), or apparent authority (see *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 523 (1993); *Reifsnyder*, 301 Pa. 328, 152 A. 98). Specifically, plaintiffs have not alleged in their complaint that Suzuki expressly gave authority to the individual dealers to bind them to statements made regarding the Samurai's safety. Nor did plaintiffs allege that the position of the dealers inherently gave them implied authority to act on behalf of Suzuki. Rather, the complaint merely stated that the dealers were "authorized Suzuki dealers." This, without more,

is merely an allegation that the dealers were given permission to sell Suzuki vehicles. It does nothing to support a claim that the dealers had implied authority from Suzuki sufficient to impose liability on Suzuki for fraudulent statements made by the dealers. See *Spiegel v. Sharp Electronics Corp.*, 125 Ill. App. 3d 897, 900 (1984) ("No [agency] relationship exists between a supplier and a retailer which simply and only sells merchandise bearing the supplier's brand name").

In addition, plaintiffs did not adequately allege apparent agency. Other than alleging that the dealers were "authorized," plaintiffs made no allegations about how Suzuki held out the dealers as its agents. For instance, plaintiffs did not allege that the dealers were required or requested by Suzuki to display the Suzuki logos upon "signs, literature, products, brochures, and plaques" within the dealerships. *Malmberg v. American Honda Motor Co.*, 644 So. 2d 888, 891 (Ala. 1994). Nor did plaintiffs allege that Suzuki held out the dealers as their agents by requiring dealer employees to wear a uniform with a Suzuki logo or by requiring dealership employees to be trained by Suzuki. See *O'Banner v. McDonald's*, 173 Ill. 2d 208, 214-15 (1996) (Bilandic, C.J., dissenting) (discussing facts relevant to apparent agency issue regarding a franchisee). In short, plaintiffs have alleged no facts to support a claim that Suzuki held out the local dealers as Suzuki's agents, thus giving them apparent authority.

In so ruling, we are not stating that an authorized dealer can never be an agent of the manufacturer. Rather, we find that in Illinois, where fact pleading is required, this complaint is insufficient. *Knox College v. Celotex Corp.*, 88 Ill. 2d 407, 424 (1981). Therefore, we affirm the dismissal of plaintiffs' common law fraud count based on statements made by local Suzuki dealers.

2. Fraudulent Concealment

In their complaint, plaintiffs further alleged that

Suzuki committed fraud by failing to disclose its knowledge of the Samurai's safety risks. In order to state a claim for fraudulent concealment, a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff. *Lidecker v. Kendall College*, 194 Ill. App. 3d 309, 314 (1990); *Wilson v. Donegal Mutual Insurance Co.*, 410 Pa. Super. 31, 40-41, 598 A.2d 1310, 1315-16 (1991). A duty to disclose a material fact may arise out of several situations. First, if plaintiff and defendant are in a fiduciary or confidential relationship, then defendant is under a duty to disclose all material facts. *Kurti v. Fox Valley Radiologists, Ltd.*, 124 Ill. App. 3d 933, 938 (1984); *City of Harrisburg v. Bradford Trust Co.*, 621 F. Supp. 463, 473 (M.D. Pa. 1985). Second, a duty to disclose material facts may arise out of a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff. *Kurti*, 124 Ill. App. 3d at 938; *City of Harrisburg*, 621 F. Supp. at 473. This position of superiority may arise by reason of friendship, agency, or experience. *Kurti*, 124 Ill. App. 3d at 938; *City of Harrisburg*, 621 F. Supp. at 473.

Plaintiffs, in their complaint, failed to state a claim for common law fraudulent concealment because they failed to adequately allege that Suzuki had a duty to disclose its knowledge of the Samurai's safety risks. *Lidecker*, 194 Ill. App. 3d at 314; *Wilson*, 410 Pa. Super. at 41, 598 A.2d at 1316. Regarding the relationship between plaintiffs and Suzuki, the complaint merely alleged that plaintiffs had purchased a Samurai from an authorized Suzuki dealer, and that Suzuki manufactured and distributed the Samurai. Nowhere in the complaint did plaintiffs sufficiently allege that they were in a confidential or fiduciary relationship with Suzuki or that Suzuki was in a position of superiority over them.

Without such allegations, plaintiffs' complaint did not allege a duty to disclose material facts which could give rise to a claim for common law fraudulent concealment. *Knox College*, 88 Ill. 2d at 424. Accordingly, the count of common law fraudulent concealment was properly dismissed by the trial court.

### B. *Illinois Consumer Fraud Act*

We now address whether plaintiffs' complaint stated a valid claim under the Illinois Consumer Fraud Act. The elements of a claim under the Illinois Consumer Fraud Act (815 ILCS 505/2 (West 1994)) are: (1) a deceptive act or practice by defendant; (2) defendant's intent that plaintiff rely on the deception; and (3) that the deception occurred in the course of conduct involving trade and commerce. *Siegel v. Levy Organization Development Co.*, 153 Ill. 2d 534, 542 (1992). Plaintiff's reliance is not an element of statutory consumer fraud (see *Harkala v. Wildwood Realty, Inc.*, 200 Ill. App. 3d 447, 453 (1990)), but a valid claim must show that the consumer fraud proximately caused plaintiff's injury (see *Wheeler v. Sunbelt Tool Co.*, 181 Ill. App. 3d 1088, 1109 (1989)). Furthermore, a complaint alleging a violation of consumer fraud must be pled with the same particularity and specificity as that required under common law fraud. *People ex rel. Hartigan v. E&E Hauling, Inc.*, 153 Ill. 2d 473, 492 (1992).

First, we address whether plaintiffs adequately pled statutory consumer fraud based upon statements by local Suzuki dealers. As with common law fraud discussed above, the complaint was insufficient to state a claim of statutory consumer fraud based on statements of local Suzuki dealers because the complaint did not adequately plead agency between Suzuki and the local dealers. Accordingly, we reverse the appellate court insofar as it reinstated any of the Suzuki consumer fraud counts based on statements by local dealers.

Second, we address whether the complaint adequately pled a consumer fraud violation based on statements made directly by Suzuki. Plaintiffs can recover damages under the Consumer Fraud Act *only* for injuries that were proximately caused by the alleged consumer fraud. See *Stehl v. Brown's Sporting Goods, Inc.*, 236 Ill. App. 3d 976, 981 (1992). Accordingly, plaintiffs can state a valid claim of consumer fraud only where premised upon statements made prior to their dates of purchase. In that the counts of consumer fraud were based upon statements made *after* the dates of purchase alleged in the complaint, they were properly dismissed.

Third, we turn to the remaining counts of statutory consumer fraud, *i.e.*, those based on statements made prior to the dates of purchase. Plaintiffs contended that the owner's manual accompanying each new Samurai contained a representation violative of the Illinois Consumer Fraud Act. Plaintiffs' complaint alleged that the owner's manual provided " 'guidelines' for safe 'on-pavement driving' " and that "[t]hese guidelines were provided because [Suzuki] knew that plaintiffs and members of the Class would 'often use [the] vehicle on paved roads.' " In other paragraphs of the complaint, plaintiffs alleged that Suzuki falsely represented to plaintiffs that the Samurai was "safe for on and off road use."

These allegations, however, were insufficient to state a claim under the Illinois Consumer Fraud Act. Plaintiffs' complaint fails because it did not allege with specificity how the manual's guidelines were false or deceptive. Specifically, the complaint failed to allege how the Samurai was unsafe where a driver followed the manual's guidelines. Without such specificity and particularity, the complaint fails to state a violation of consumer fraud. *E&E Hauling*, 153 Ill. 2d at 492. Ac-

cordingly, we reverse the appellate court's reinstatement of this count, which had been dismissed by the circuit court.

In their complaint, plaintiffs also alleged that Suzuki committed consumer fraud by providing misinformation to Car & Driver magazine. In January 1986, Car & Driver published a review of the Samurai, allegedly based on information provided by Suzuki. In the article, the reviewer stated: "Mindful of the rollover problems associated with other vehicles of this type, the Suzuki engineers built extensive passenger protection into the convertible version of the Samurai." Plaintiffs contend in their complaint that this information was false, alleging that, "in the event of a rollover, the Samurai provides little, if any, protection for the occupants of the vehicle in that it has improper side-door strength and roof-crush resistance."

In light of the fact that the Illinois Consumer Fraud Act should be liberally construed (*Law Offices of William J. Stogsdill v. Cragin Federal Bank for Savings*, 268 Ill. App. 3d 433, 436 (1995)) and that, in reviewing the legal adequacy of a complaint, we must interpret the allegations of the complaint in the light most favorable to the plaintiff (*DiBenedetto*, 153 Ill. 2d at 69-70), we find that plaintiffs' allegations regarding Suzuki's representation to Car & Driver magazine adequately stated a cause of action for consumer fraud.

First, plaintiffs' complaint adequately pled a deceptive act or practice by Suzuki. Specifically, plaintiffs alleged that Suzuki represented to Car & Driver that the Samurai had special safety features to protect passengers involved in a rollover accident and that this information was false since the Samurai had improper side-door strength and roof-crush resistance.

Second, plaintiffs alleged that Suzuki intended purchasers to rely on this statement, which they claim

is evident from the very nature of the representations themselves. Suzuki made statements to a magazine planning to publish a review of the Samurai. Suzuki undoubtedly knew that many prospective purchasers would read the review and that information furnished to the magazine by Suzuki would be one basis of the published review.

Third, plaintiffs alleged that the statements were made in trade or commerce. Fourth, plaintiffs have alleged proximate cause, as required. They allege that their purchases occurred after the allegedly fraudulent statements, and the complaint contains no facts showing an intervening cause that would break the chain of proximate causation. Furthermore, the required allegation of proximate cause is minimal since that determination is best left to the trier of fact. *Petrauskas v. Wexenthaller Realty Management, Inc.*, 186 Ill. App. 3d 820, 832 (1989). We thus affirm the appellate court's decision to reinstate the consumer fraud count based on Suzuki's misinformation to Car & Driver magazine.

Lastly, we consider the counts alleging that Suzuki fraudulently concealed material facts from plaintiffs. First, plaintiffs alleged that Suzuki failed to inform consumers of the Samurai's rollover tendency, which was "an improper concealment, suppression, or omission of a material fact, in violation of the Consumer Fraud Acts." Plaintiffs further alleged that Suzuki committed consumer fraud based on the mere sale of the Samurai without disclosure of the safety risks, in that "[t]he offering for sale *** of a consumer product *** constitutes a representation *** that the product is reasonably safe for its intended use."

An omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. 815 ILCS 505/2 (West 1994); *Mackinac v. Arcadia National Life Insurance Co.*, 271 Ill. App. 3d 138, 141

(1995). A material fact exists where a buyer would have acted differently knowing the information, or if it concerned the type of information upon which a buyer would be expected to rely in making a decision whether to purchase. *Mackinac*, 271 Ill. App. 3d at 141. Furthermore, it is unnecessary to plead a common law duty to disclose in order to state a valid claim of consumer fraud based on an omission or concealment. *Celex Group, Inc. v. Executive Gallery, Inc.*, 877 F. Supp. 1114, 1129 (N.D. Ill. 1995).

We find that plaintiffs adequately pled a consumer fraud violation based on a material omission by Suzuki. Plaintiffs alleged that Suzuki was aware of the Samurai's safety problems, including its tendency to roll over and its inadequate protection for passengers. Plaintiffs further alleged that Suzuki failed to disclose these defects. Finally, plaintiffs alleged that the safety problems of the Samurai were a material fact in that they would not have purchased the vehicles if Suzuki had disclosed the Samurai's safety risk. Accordingly, we affirm the appellate court insofar as it reinstated the count alleging that Suzuki committed consumer fraud by concealing material facts about the Samurai's safety risks.

## CONCLUSION

To summarize, we find that the counts based in UCC breach of warranty and common law fraud were properly dismissed. We reinstate the Illinois consumer fraud count, but only insofar as it was based on the 1986 Car & Driver article or on Suzuki's concealment of material facts regarding the Samurai's safety risk. For these reasons, we affirm in part and reverse in part the judgments of the appellate and circuit courts, and remand

this cause to the circuit court.

*Appellate court judgment affirmed in part*
*and reversed in part;*
*circuit court judgment affirmed in part*
*and reversed in part;*
*cause remanded.*

JUSTICE HARRISON, concurring in part and dissenting in part:

Although most of the majority's analysis is correct, I disagree with its conclusion that plaintiffs did not adequately plead that the various Suzuki dealers were Suzuki's agents. The complaint specifically alleged that the vehicles were purchased from "authorized Suzuki dealers" who were "the actual and apparent agents of [Suzuki]." At this point I do not know what else needed to be said. Under the Code of Civil Procedure, "[n]o pleading is bad in substance which contains such information as reasonably informs the opposite party of the nature of the claim or defense which he or she is called upon to meet." 735 ILCS 5/2—612(b) (West 1992). The allegations here accomplished that purpose. Additional details, even if plaintiffs had them, would have contributed little. The complaint, as it stood, supplied ample information for defendants to prepare their answer.

I fail to see, moreover, how the court could reasonably expect plaintiffs to be any more specific at this stage of the proceedings. The situation here is analogous to the one present in *Gilbert v. Frank*, 233 Ill. App. 3d 372 (1992), a medical malpractice action against a hospital and one of its emergency room physicians. Rejecting the hospital's argument that the complaint did not adequately allege that the physician was its apparent agent, the appellate court held that

"precision pleading should not be required if knowledge of the pertinent facts is within the control of the defendant rather than the plaintiff. (*Holton v. Resurrection Hospital*

(1980), 88 Ill. App. 3d 655, 658.) In the case at bar, the hospital would have had knowledge about the nature of its relationship with [the physician], but it is highly unlikely that plaintiff would have had access to this information when she filed her complaint. Therefore we do not believe it is unfair to the hospital to construe the allegation that [the physician] was its agent to be an allegation that he was either an actual or apparent agent. We conclude that plaintiff adequately alleged in count II that [the physician] was an apparent agent of the hospital and reject the hospital's contrary contention." *Gilbert v. Frank*, 233 Ill. App. 3d at 377.

Our court subsequently granted a petition for leave to appeal in the case and expressly agreed with the appellate court's reasoning and result on this issue. *Gilbert v. Sycamore Municipal Hospital*, 156 Ill. 2d 511, 527 (1993). This result is consistent with the principle that the existence of an agency relationship is a question of fact for the trier of fact and that "[t]o require plaintiffs, without benefit of discovery, to include in their complaint sufficient factual detail to permit a determination of these questions from the face of the complaint is both unrealistic and unnecessary." *Sherman v. Field Clinic*, 74 Ill. App. 3d 21, 25 (1979).

Even if I could put these considerations aside and accept that the allegations in the body of the complaint were too conclusory, by themselves, to comply with our pleading requirements, the majority's analysis would still be unpersuasive. In declaring the agency allegations deficient, the majority overlooks the exhibits that were attached to the plaintiffs' complaint. Where, as here, exhibits are incorporated into a pleading, the facts set forth in those exhibits have the same effect as if they had been alleged in the body of the pleading itself. See *E.A. Cox Co. v. Road Savers International Corp.*, 271 Ill. App. 3d 144, 149 (1995). Accordingly, the facts contained in the exhibits must be considered alongside the allegations of the complaint in determining whether

the pleading adequately states a cause of action. See *Payne v. Mill Race Inn,* 152 Ill. App. 3d 269, 275 (1987).

The exhibits to plaintiffs' third-amended complaint indicate that Suzuki dealerships are not simply independent merchants who buy a product from a manufacturer and resell it to third parties. The dealerships sell the vehicles on Suzuki's behalf, and the corporation receives no payment for its vehicles until the dealerships have managed to sell them. Suzuki has also made the dealerships responsible for handling the warranties extended by the corporation to its customers. The owner's manual furnished to consumers by Suzuki for the vehicle at issue here provides that any questions are to be referred to the dealer, not Suzuki, and that if warranty service is required, the vehicle should be taken to the dealer. These facts clearly suggest that the dealers do act, in every meaningful sense, as the agents of Suzuki for the purpose of selling and servicing Suzuki vehicles.

If, despite all this, the court still believes that plaintiffs' complaint is deficient, it is time for it to reassess its pleading requirements. The General Assembly has declared that pleadings must be construed liberally with the ultimate goal of doing substantial justice between the parties (735 ILCS 5/2—603(c) (West 1992)), and we are bound to adhere to this principle. Instead, the majority persists in refusing to even acknowledge that the principle exists. See *Anderson v. Vanden Dorpel,* 172 Ill. 2d 399, 417-20 (1996) (Harrison, J., dissenting). Although my colleagues purport to rely on the old doctrine of "fact pleading" to justify their position, I am afraid that what is really at work here is a fundamental opposition to plaintiffs' claims. This is unfair and contrary to the law. The court should not subvert procedural requirements in order to effectuate its own private version of tort reform.

I would reinstate the Illinois consumer fraud count

based on representations by local Suzuki dealers as well as on the concealment of material facts by Suzuki itself. I would likewise reinstate plaintiffs' common law fraud count to the extent it is based on representations by local Suzuki dealers.

JUSTICE McMORROW, also concurring in part and dissenting in part:

I agree with the majority that the circuit court correctly dismissed the common law fraud counts for failure to state a cause of action. I also believe that the majority properly reinstates that part of the Illinois consumer fraud count relating to Suzuki's concealment of the Samurai's safety risks. However, I find that the complaint adequately alleges that Suzuki knew its vehicles were "troublesome and must be watched." Accordingly, I would affirm the appellate court's reinstatement of the breach of warranty claims.

As the majority observes, both the Illinois and Pennsylvania Commercial Codes provide that "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise." 810 ILCS 5/2—313(1)(a) (West 1994); 13 Pa. Cons. Stat. § 2313(a)(1) (1984). If the goods fail to conform to the affirmation or promise, the seller may be held accountable for breach of warranty. In order to maintain such an action, a "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 ILCS 5/2—607(3)(a) (West 1994). There are, however, two recognized exceptions to giving notice. "Direct notice is not required when (1) the seller has actual knowledge of the defect of the particular product (*Malawy v. Richards Manufacturing Co.*, 150 Ill. App. 3d 549 (1986)); or (2) the seller is deemed to have been reasonably notified by the filing of the buyer's

complaint alleging breach of UCC warranty (*Perona v. Volkswagen of America, Inc.,* 276 Ill. App. 3d 609 (1995))." 174 Ill. 2d at 492.

In this case, the complaint clearly alleges that Suzuki had actual knowledge of a defect in its vehicles. The majority itself notes: "It is uncontroverted that Suzuki was aware of the safety concerns regarding the Samurai. Suzuki knew of the unfavorable report about the Samurai issued by Consumers Union, as evidenced by its attempts to counter that report with its own publicity. Moreover, Suzuki entered [into] settlement agreements with several states following attorney general investigations of the Samurai's safety risks." 174 Ill. 2d at 493.

Nonetheless, the majority holds that "it is essential that the seller be notified that *this particular transaction* is 'troublesome and must be watched.' " (Emphasis in original.) 174 Ill. 2d at 493, quoting 810 ILCS Ann. 5/2—607, Uniform Commercial Code Comment 4 (Smith-Hurd 1993). Thus, because the plaintiffs here did not allege that Suzuki was aware that there was trouble with each and every one of plaintiffs' vehicles, the majority finds that Suzuki did not have actual knowledge of the defect. Surprisingly, the court reaches this conclusion even though plaintiffs alleged that Suzuki had knowledge that all of its vehicles suffered the same design defect.

As support for its holding, the majority relies almost exclusively on the appellate court decision in *Malawy v. Richards Manufacturing Co.,* 150 Ill. App. 3d 549 (1986). That case, however, is not only inapposite to the case at bar, it also does not stand for the proposition for which it is cited, namely, that a seller must be notified of trouble with every *particular* transaction.

In *Malawy,* a single plaintiff suffered a fracture to his right hip. As part of his surgery, doctors installed a metal plate into the femur shaft fracture. The plate

later broke, resulting in at least five more surgeries. Plaintiff sued the hospital (as the seller) as well as the manufacturer of the plate under a breach of warranty theory. The manufacturer argued, however, that it did not receive notice of the plaintiff's warranty claim. The appellate court disagreed.

First, the court held that the seller, St. Elizabeth's Hospital, had actual notice of the defect because its doctors removed the broken plate. Second, the court noted that the manufacturer was in fact "notified of the break of the plate immediately after plaintiff [who originally sued the wrong manufacturer] obtained knowledge that it was the manufacturer of the plate." *Malawy*, 150 Ill. App. 3d at 561. Importantly, nowhere in *Malawy* did the court ever hold that knowledge of a *particular* transaction is a prerequisite to satisfying the notice requirements. It just so happened that in *Malawy* there was a single buyer and a single product. As a result, once the seller learned of the broken plate, the seller necessarily became aware that there was trouble with that particular transaction. That circumstance, however, is far different from the factual situation presented here.

In contrast to *Malawy*, this case involves a nationwide class action against the manufacturer of a product claimed to have been defectively designed. Specifically, plaintiffs allege that a defect in the Samurai's design caused all of the vehicles to roll over during turns or evasive maneuvers. Unlike a manufacturing defect, which occurs when one or more products are defectively made, a design defect renders all of the products defective all of the time.[1] Consequently, if a manufacturer has actual knowledge that one of its products suffers a

---

[1]For example, if a vehicle's wheel base is, by design, so narrow that each time a driver attempts to turn the vehicle it falls on its side, the car is said to have been defectively designed. All of the vehicles will suffer the same defect. If, on the other hand, a

design defect, as opposed to a manufacturing defect, it necessarily follows that the manufacturer has knowledge that all of its products suffer that defect. In this case, Suzuki had actual knowledge that the Samurai suffered a design defect rather than a manufacturing defect. The majority concedes as much, citing to the negative report issued by Consumers Union as well as the attorney general investigations of the Samurai's safety risks. Because Suzuki knew that its Samurai suffered a design defect, it knew *a fortiori* that each and every Samurai was defective. Contrary to the majority, I simply cannot fathom how Suzuki can claim that it did not have knowledge of a defect in each of its Samurais when in fact it had actual knowledge of a defect in all of its Samurais.

Finally, as noted above, plaintiffs seek to represent a class consisting of all persons in the United States who have purchased or leased a Samurai during the relevant time period. Putting Suzuki on notice to the same defect in every Samurai would not only be *redundant*, it would also likely prove impractical. What purpose would be served in requiring such notice where it appears that large quantities of the same defective product are at issue? What purpose would be served in requiring such notice where there has been a considerable number of complaints over a substantial period of time, so much so that the attorneys general of several states have intervened on consumers' behalf?

Because I believe that plaintiffs' complaint adequately alleges that Suzuki had actual knowledge of the defect, and because I find Suzuki's other arguments regarding plaintiffs' claims for breach of warranty lack-

---

vehicle falls on its side, not because it was designed defectively, but because that particular vehicle was manufactured improperly (*e.g.*, wheels put on out of alignment), only that vehicle is defective.

ing in merit, I would affirm the appellate court's reinstatement of the breach of warranty count.

For the foregoing reasons, I respectfully dissent in part.

JUSTICE FREEMAN joins in this partial concurrence and partial dissent.