**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 22-1146**

─────────────

DASH BPO, LLC,

        Plaintiff − Appellant,

     v.

GREG E. LINDBERG; GLOBAL CREDIT & COLLECTION CORPORATION, d/b/a Affinity Global,

        Defendants – Appellees.

─────────────

Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Louise W. Flanagan, District Judge. (5:20−cv−00625−FL)

─────────────

Submitted: November 15, 2023            Decided: June 7, 2024

─────────────

Before DIAZ, Chief Judge, QUATTLEBAUM, Circuit Judge, and Roderick C. YOUNG, United States District Judge for the Eastern District of Virginia, sitting by designation.

─────────────

Affirmed by unpublished per curiam opinion.

─────────────

**ON BRIEF:** John R. Buric, Preston O. Odom III, Jon P. Carroll, JAMES, MCELROY & DIEHL P.A., Charlotte, North Carolina, for Appellant. William G. Whitehill, CONDON TOBIN SLADEK THORNTON NERENBERG, PLLC, Dallas, Texas; Matthew Nis Leerberg, FOX ROTHSCHILD LLP, Raleigh, North Carolina, for Appellees.

─────────────

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Dash BPO, LLC appeals the district court's order dismissing its complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). As relevant to this appeal, the complaint raised common law fraudulent concealment claims against Greg Lindberg and Global Credit & Corporation, d/b/a Affinity Global ("Defendants"). It also asserted a claim under the North Carolina Unfair and Deceptive Trade Practices Act, or, in the alternative, the Illinois Consumer Fraud and Deceptive Practices Act or the Florida Deceptive and Unfair Trade Practices Act.

The claims in Dash's complaint arose following a breakdown of its business relationship with Affinity after Lindberg, Affinity's owner and principal, was indicted for allegedly engaging in a yearlong (unrelated) bribery scheme in North Carolina. Dash alleges that Affinity knew of and fraudulently concealed Lindberg's criminal conduct from Dash as the parties were negotiating—and ultimately entered into—an agreement to do business together. And Dash contends that as a result of Lindberg's conduct, which was publicly exposed when Lindberg was indicted, it lost a lucrative contract and business relationship with Bank of America, a client with whom Dash had worked before working with Affinity.

The district court granted Defendants' motion to dismiss after determining that Dash had failed to plead with particularity: (1) that a fiduciary or special relationship existed between Affinity and Dash giving rise to a duty for Affinity to disclose Lindberg's criminal conduct; (2) that a joint venture relationship existed between the parties giving rise to a duty for Affinity to disclose that conduct; and (3) that Lindberg's knowledge could be

2

imputed to Affinity based on an alter ego theory or a "sole actor" agency theory. The district court also dismissed Dash's claims brought under the respective state-law unfair trade practices statutes because those claims depended on Dash's insufficiently pleaded fraudulent concealment allegations.

We affirm.

I.

Daniel Elmalem formed Affinity in 2003 to provide "multi-national customer management solutions, including . . . third-party debt recoveries." J.A. 14 ¶ 7. Affinity began providing such debt collection services for Bank of America beginning in 2014, and Affinity and the Bank renewed this contract (the "Bank Contract") in 2016 for a term of three years.

In 2017, Greg Lindberg acquired an undisclosed number of shares of Affinity[1] through his U.S. holding company, GCC Holdings, which was in turn held by his worldwide holding company, Eli Global, LLC. "As part of that transaction, GCC Holdings acquired the rights to some, but not all" of Affinity's client contracts. *Id.* at 15 ¶ 13. It didn't acquire the rights to the Bank of America debt-collection contract in the stock sale.

---

[1] According to the complaint, Lindberg is the "sole managing member of Eli Global"; Eli Global is itself the "sole managing member of GCC Holdings"; and GCC Holdings, pursuant to the stock sale, is the "sole owner" of Affinity. J.A. 15–16 ¶ 14. The complaint further alleges that Lindberg "dominated and controlled, and dominates and controls, the decisions and operations of Eli Global, GCC Holdings and Affinity Global." J.A. 16 ¶ 14.

Rather, Elmalem formed Dash on August 17, 2017, to continue performance under the Bank Contract following the acquisition.

At some point in 2018, Dash and Affinity began discussing the possibility of transferring Dash's operations (which included servicing the Bank Contract) to Affinity. The parties eventually signed a "client brokering contract" (the "Agreement"), *see generally* J.A. 30–34, under which Affinity would take on Dash's operations and clients—including servicing the Bank Contract—in exchange for Affinity paying Dash a percentage of the revenue generated under Dash's contracts.

But before Affinity could perform under the Agreement, Lindberg was indicted in North Carolina for a bribery scheme unrelated to the business arrangement between Dash and Affinity. When Lindberg's indictment became public knowledge, Bank of America terminated the Bank Contract.

"Dash attempted to salvage the business relationship by asking Bank of America if it would separately contract with Dash to allow it to continue providing the first party customer care contract work Dash," and previously, Affinity, had "provided for years under the [Bank] Contract." J.A. 21 ¶ 41. But the Bank declined because Dash "was tied to Affinity Global and, therefore, Lindberg." *Id.*

Following the termination of the Bank Contract, Dash sued the Defendants in federal court. In its complaint, Dash alleged that Lindberg,

> through his unlawful conduct, [] destroyed Dash's business relationship with Bank of America, frustrated the intent of the Agreement, deprived Dash of receiving the expected benefits under the Agreement, and interfered with Dash's future ability to do business with Bank of America, thereby damaging Dash in the multiple hundreds of thousands of dollars.

4

*Id.* at 21–22 ¶ 44.

The complaint alleges the following claims against both Defendants: common law fraudulent concealment (Count One); a violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.* (Count Five); or, in the alternative, a violation of the Illinois Consumer Fraud and Deceptive Practices Act, 815 Ill. Comp. Stat. 505/1, *et seq.* (Count Six); or a violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.201, *et seq.* (Count Seven).[2]

The district court granted Defendants' motion to dismiss the complaint in its entirety. This appeal followed.

## II.

We review a district court's order granting a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) de novo. *Edmonson v. Eagle Nat'l Bank*, 922 F.3d 535, 545 (4th Cir. 2019). Dash's claims are also subject to pleading standards under Federal Rules of Civil Procedure 8 and 9.

Under Rule 8(a)(2), a pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requires more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action," but it doesn't require "detailed factual allegations." *Ashcroft v. Iqbal*, 556 U.S.

---

[2] After Defendants moved to dismiss, Dash voluntarily dismissed tortious interference claims alleged against Lindberg in Counts Two through Four of its complaint.

5

662, 678 (2009). Rather, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (cleaned up).

A party raising a fraudulent concealment claim must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Specifically, "a plaintiff must plead the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." *Edmonson*, 922 F.3d at 553 (cleaned up). Nonetheless, "a court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant has been made aware of the particular circumstances for which [it] will have to prepare a defense at trial, and (2) that the plaintiff has substantial pre[-]discovery evidence of those facts."[3] *Id.* (cleaned up).

"Because only the legal sufficiency of the complaint, and not the facts in support of it, are tested under a Rule 12(b)(6) motion, we assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Markets, Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). However, "we need not accept the legal conclusions drawn from the facts.

---

[3] Dash contends on appeal that "Rule 9(b) permits a relaxation of the 'particularity' requirement where the plaintiff lacks knowledge of facts important to the claim that may become known only through discovery." Reply Br. at 2. But its arguments that this principle excuses it from alleging specific facts about Lindberg's bribery scheme, *see id.* at 3–4—an issue that has little to do with the ultimate issues here—are inapposite.

Similarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.* (cleaned up).

With these standards in mind, we turn to the allegations in Dash's complaint.

### III.

### A.

Dash maintains that it plausibly alleged in its complaint that (1) Affinity owed Dash a fiduciary or special duty requiring Affinity to inform Dash of Lindberg's misconduct before the parties executed the Agreement; and (2) Affinity had sufficient knowledge of Lindberg's ongoing misconduct, either directly or because that knowledge was imputed to Affinity.

Alternatively, Dash argues, Affinity's "silence and suppression of material facts created a duty to disclose Lindberg's unlawful conduct" because such acts in combination amounted to unlawful fraudulent concealment under Illinois law. Opening Br. at 19. Under either of these theories, it asserts, "Dash sufficiently [pleaded] facts that gave rise to a duty to speak." *Id.*

To state a claim for fraudulent concealment under Illinois law, "a plaintiff must allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff."[4] *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 593 (Ill. 1996). "A duty to disclose a material fact may arise out of several situations." *Id.* For instance, if a

---

[4] The parties agree that Illinois law governs Dash's fraudulent concealment claims.

plaintiff and a defendant are in a fiduciary or confidential relationship, then the defendant is under a duty to disclose "all material facts." *Id.* A duty to disclose may also arise from a special relationship—that is, a relationship in which a "plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Id.* In that scenario, "[a] position of superiority may arise by reason of friendship, agency, or experience." *Id.*

Moreover, because Rule 9(b)'s heightened pleading standard applies to fraudulent concealment claims, "[t]he plaintiff has the burden to plead with specificity . . . the existence of a fiduciary or special relationship." *Greenberger v. GEICO Gen. Ins.*, 631 F.3d 392, 401 (7th Cir. 2011).

Illinois courts have also recognized a claim for fraudulent concealment stemming from silence coupled with the active concealment of a material fact. Specifically, a "duty to disclose" may arise "when the defendant's acts contribute to the plaintiff's misapprehension of a material fact and the defendant intentionally fails to correct plaintiff's misapprehension." *Lefebvre Intergraphics, Inc. v. Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1366 (N.D. Ill. 1996) (cleaned up). On this theory, "to [plausibly plead] the concealment amounted to a fraudulent misrepresentation," a plaintiff must allege:

> (1) the concealment of a material fact; (2) the concealment was intended to induce a false belief, under circumstances creating a duty to speak; (3) the innocent party could not have discovered the truth through a reasonable inquiry or inspection, or was prevented from making a reasonable inquiry or inspection, and relied upon the silence as a representation that the fact did not exist; (4) the concealed information was such that the injured party would have acted differently had he been aware of it; and (5) that reliance by the person from whom the fact was concealed led to his injury.

8

*Stewart v. Thrasher*, 610 N.E.2d 799, 804 (Ill. App. Ct. 1993) (cleaned up).

B.

Having reviewed the record, the parties' briefs and the district court's thorough opinion, we agree with the district court that Dash failed to plead a fiduciary or special relationship with the requisite specificity. *See Dash BPO, LLC v. Lindberg*, No. 5:20-CV-625-FL, 2022 WL 107106, at *6–7 (E.D.N.C. Jan. 11, 2022). Nor did it do so as to any claim of active concealment.

We also agree with the district court that Dash's fraudulent concealment claims can't proceed as to Affinity for a second, separate reason: the complaint fails to allege "facts giving rise to a plausible inference that defendant Affinity had knowledge of defendant Lindberg's unlawful conduct" under an alter ego or agency theory.[5] *Id.* at *7. After all, "a party cannot fraudulently conceal information that it does not know." *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 40 N.E.3d 264, 621 (Ill. App. Ct. 2015); *accord Chicago Park Dist. v. Kenroy, Inc.*, 402 N.E.2d 181, 185 (Ill. 1980) (holding in response to a statute of limitations defense that where there was "no apparent reason" based on the allegations in the complaint "for the [plaintiff] to suspect that its fiduciary . . . had entered into a scheme of bribery and fraud with the defendants until it became apparent during his

---

[5] We also affirm the district court's dismissal of Dash's statutory unfair and deceptive trade practices claims—which are "premised upon defendants' [alleged] fraudulent concealment" of Lindberg's conduct—on the basis that a plaintiff cannot sustain such claims after failing to state a claim for fraudulent concealment. *See id.* at *10.

9

prosecution," the plaintiff was "[not] obliged to search for the misfeasance of its [fiduciary]").

Accordingly, we affirm on the sound reasoning of the district court.  And we dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

*AFFIRMED*