2024 IL App (1st) 231369

FIFTH DIVISION
June 7, 2024

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

No. 1-23-1369

| | | |
|---|---|---|
| MELISSA ANDREWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Appeal from the |
| CARBON ON 26TH, LLC; CARBON ON CHICAGO, | ) | Circuit Court of |
| LLC ; MARTIN PRODUCE, INC.; JACK TUCHTEN | ) | Cook County. |
| WHOLESALE PRODUCE, INC.; and LA GALERA | ) | |
| PRODUCE, INC., | ) | |
| | ) | |
| Defendants | ) | No. 16 L 6628 |
| | ) | |
| (Martin Produce, Inc., | ) | |
| | ) | |
| Third-Party Plaintiff-Appellant, | ) | Honorable |
| v. | ) | Daniel J. Kubasiak, |
| | ) | Judge Presiding. |
| Jack Tuchten Wholesale Produce, Inc. and La Galera | ) | |
| Produce, Inc., | ) | |
| | ) | |
| Third-Party Defendants-Appellees). | ) | |
| | ) | |

JUSTICE MIKVA delivered the judgment of the court, with opinion.
Justices Lyle and Navarro concurred in the judgment and opinion.

**OPINION**

¶ 1    In the summer of 2016, fast-casual Mexican restaurants Carbon on 26th, LLC, and Carbon

on Chicago, LLC (collectively, Carbon), closed due to an outbreak of Escherichia coli O157:H7

(E. coli) bacteria that sickened a number of the restaurants' customers and was believed by the

Chicago Department of Public Health (health department) to have been caused by contaminated cilantro. Personal injury lawsuits were filed against the restaurant and, ultimately, against other entities within the chain of distribution for the cilantro. Those claims were settled on the eve of trial in March 2020 and are not part of this appeal. A number of related claims were also filed in this litigation, including the one that is now before us—the claim of distributor Martin Produce Inc. (Martin Produce), against wholesalers Jack Tuchten Wholesale Produce, Inc. (Jack Tuchten), and La Galera Produce, Inc. (La Galera) (collectively, the wholesalers), for breach of the implied warranty of merchantability. Martin Produce has and continues to assert that the cilantro at issue was not the source of the outbreak but alleged that, if it was found to have breached its implied warranty of merchantability by selling contaminated cilantro, then the wholesalers it sourced the cilantro from had done so as well. The circuit court granted summary judgment in favor of the wholesalers on that claim, concluding that Martin Produce had failed to provide them with pre-suit notice as required by section 2-607(3)(a) of the Uniform Commercial Code (UCC) (810 ILCS 5/2-607(3)(a) (West 2022)).

¶ 2    Martin Produce now appeals, asking us to hold that the notice requirement does not apply where, as here, the purported breach involves a perishable good with latent defects. If the notice requirement does apply, Martin Produce argues in the alternative that one or both of the exceptions set out by our supreme court in *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 492 (1996)—actual knowledge of the defect or notification through the filing of the buyer's complaint—relieved it of its duty to provide direct notice under that section.

¶ 3    For the reasons that follow, we conclude that section 2-607(3)(a) does apply but hold that summary judgment based on a lack of notice was not proper here. We cannot say as a matter of law that the wholesalers lacked actual pre-suit knowledge that the cilantro they sold to Martin

Produce was claimed to be defective. We reverse the circuit court's grant of summary judgment in the wholesalers' favor based on a lack of notice and remand for further proceedings on Martin Produce's warranty claim.

¶ 4                                  I. BACKGROUND

¶ 5      The record in this case is quite lengthy, and the parties have stipulated that only the portion from May 2022—when the wholesalers first moved for summary judgment on Martin Produce's initial claim for contribution against them—to the present is relevant to this appeal. The relevant facts are largely undisputed.

¶ 6      In June 2016, the wholesalers each sold cilantro to Martin Produce, which Martin Produce then sold to Carbon. Beginning in mid-June, a number of cases of E. coli were reported by patrons of the restaurant. The health department investigated, and on July 1, 2016, it issued a foodborne final report concluding that "[c]ilantro was the most likely food-vehicle causing this outbreak," based on both "the strong statistical association of raw cilantro consumption with illness" and the high percentage of cases that could be explained by cilantro consumption. The report noted that the distributor (Martin Produce) obtained cilantro from multiple sources, that no other restaurants serviced by the distributor were linked to the outbreak, and that "it was not possible to perform further traceback to assess for a common source of contamination."

¶ 7      Alexander Maciel, manager of Martin Produce, confirmed at his deposition that produce received from different wholesalers was placed together in Martin Produce's coolers and was not marked to identify its source. He was contacted by the health department following the outbreak and provided it with invoices for the cilantro Martin Produce had purchased in the last month. The health department also tested the cilantro in Martin Produce's warehouse, but Mr. Maciel was never told the results of those tests and had no further involvement with the health department's

investigation. He could not recall if the health department focused only on cilantro or if it also investigated and tested other food products sold to Carbon by Martin Produce.

¶ 8    Dr. Stephanie Black, an epidemiologist with the health department, testified that invoices were requested from Martin Produce not just for cilantro, but for all of its produce items, as the department had not yet "honed in" on a particular food item.

¶ 9    Beginning in July 2016, 55 personal injury lawsuits were filed against Carbon by the restaurant patrons who became ill as a result of the outbreak. Claims were added against Martin Produce on January 19, 2017, and against several wholesale suppliers of cilantro, including Jack Tuchten and La Galera, on June 13, 2018. The restaurant patrons asserted claims against each of these defendants for strict product liability and negligence and an additional claim for breach of warranty against Carbon. They alleged that they were sickened by adulterated cilantro the wholesalers sold to Martin Produce and included in their pleading a detailed statement of facts regarding the E. coli outbreak and the health department's investigation. The personal injury cases were consolidated, with litigation and extensive discovery continuing for a number of years, until just after jury selection, when the plaintiffs reached a global settlement with all defendants in March 2020.

¶ 10    On October 27, 2017, while the personal injury litigation was ongoing, Carbon filed claims for strict products liability, negligence, contribution, and breach of express and implied warranties against Martin Produce and several wholesalers, including Jack Tuchten. It added claims against La Galera on March 1, 2018. The restaurant dropped its claims against both wholesalers in a subsequent amendment to its pleading filed on June 20, 2018, however, apparently due to a lack of privity between the restaurant and the wholesalers.

¶ 11    This prompted Martin Produce, on April 16, 2019, to file contingent claims for contribution

against the wholesalers under the Joint Tortfeasor Contribution Act (740 ILCS 100/0.01 *et seq.* (West 2018)). In the spring of 2022, the wholesalers moved for summary judgment on those claims on the basis that the underlying tort claims were barred by the economic-loss doctrine and contribution was not available for the breach of warranty claim, which sounded in contract. The circuit court granted those motions on June 30, 2022.

¶ 12 Martin Produce amended its complaint against the wholesalers the following day, to assert a claim for breach of the implied warranty of merchantability. It continued to deny that cilantro was the cause of the E. coli outbreak but alleged that if it were found liable to Carbon, then the wholesalers had breached the implied warranty of merchantability by supplying Martin Produce with tainted cilantro and were responsible for a *pro rata* share of any liability. Martin Produce alleged that the wholesalers each "had actual notice of the alleged defect of the cilantro in or around June 2018 as a result of being named as a defendant in the [personal injury complaints]"; that "[a]s a result of the many Individual Complaints, for over three years, all parties ha[d] engaged in extensive written and oral discovery"; and that through that extensive discovery, the wholesalers "had the opportunity to review and consider extensive evidence relating to Carbon's breach of warranty claim against Martin [Produce]."

¶ 13 On July 13, 2022, the wholesalers moved for summary judgment based on, among other things, the fact that they were never provided pre-suit notice under UCC section 2-607. They argued both that the filing of claims against them by the personal injury plaintiffs could not satisfy Martin Produce's notice obligation and, alternatively, that even if it could, that notice did not come within a reasonable time following the alleged breach of implied warranty.

¶ 14 The circuit court at first denied the motion, concluding that a genuine issue of material fact existed. The court said that it "[could not] ignore its common sense nor ignore the over five years

of litigation, to apply Section 2-607 without considering the E. coli outbreak that injured over 70 of Carbon's customers." It further noted that "[l]ogically, Martin [Produce] would never notify [the wholesalers] of a defect that Martin itself denie[d] existed."

¶ 15    On reconsideration, however, the court entered summary judgment in the wholesalers' favor. The court believed it had erroneously suggested in its earlier decision that the law would "allow a defendant-seller to receive 'reasonable notice' from third-parties via the filing of a lawsuit." But Illinois law was clear, the court concluded, "that only consumer plaintiffs that suffer a personal injury can satisfy their Section 2-607 notice requirement by filing a lawsuit against the seller." The court believed that "a strict reading of the UCC" thus required it to grant the wholesalers' motion.

¶ 16    Martin Produce's motion to reconsider the grant of summary judgment was denied, and it now appeals.

¶ 17                                    II. JURISDICTION

¶ 18    The circuit court granted summary judgment in favor of the wholesalers on May 16, 2023, On July 5, 2023, Carbon voluntarily dismissed its remaining claim against Martin Produce. With that dismissal, all claims brought against all parties in this litigation were fully and finally resolved, and all prior orders were rendered final and appealable. See *Dubina v. Mesirow Realty Development, Inc.*, 178 Ill. 2d 496, 502-03 (1997) (noting that, absent an Illinois Supreme Court Rule 304(a) (eff. Feb. 1, 1994) finding, a final order disposing of fewer than all of the claims in an action is not appealable until all of the claims in the litigation have been resolved). Martin Produce filed a timely notice of appeal on July 26, 2023. This court has jurisdiction pursuant to Illinois Supreme Court Rule 301 (eff. Feb. 1, 1994) and Rule 303 (eff. July 1, 2017), governing appeals from final judgments entered by the circuit court in civil cases.

6

¶ 19                                    III. ANALYSIS

¶ 20    At issue in this appeal is whether the wholesalers were entitled to judgment in their favor as a matter of law on Martin Produce's claims against them for breach of warranty, on the grounds that they were not provided with notice under section 2-607(3)(a) of the UCC. 810 ILCS 5/2-607(3)(a) (West 2022). Summary judgment is appropriate where, construed liberally in favor of the party opposing judgment, " 'the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.' " *Carney v. Union Pacific R.R. Co.*, 2016 IL 118984, ¶ 25 (quoting 735 ILCS 5/2-1005(c) (West 2012)). Although summary judgment is "encouraged as an aid in the expeditious disposition of a lawsuit," it is "a drastic means of disposing of litigation and, therefore, should be allowed only when the right of the moving party is clear and free from doubt." *Adams v. Northern Illinois Gas Co.*, 211 Ill. 2d 32, 43 (2004). "[W]here reasonable persons could draw divergent inferences from the undisputed material facts or where there is a dispute as to a material fact, summary judgment should be denied and the issue decided by the trier of fact." *Jackson v. TLC Associates, Inc.*, 185 Ill. 2d 418, 424 (1998). Our review of a circuit court's grant or denial of summary judgment is *de novo*. *Doria v. Village of Downers Grove*, 397 Ill. App. 3d 752, 756 (2009).

¶ 21    Section 2-607(3)(a) of the UCC provides that, "[w]here a tender has been accepted," the "buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 ILCS 5/2-607(3)(a) (West 2022). The notice need not be a threat to sue; its content need only alert the seller that "the transaction is still troublesome and must be watched." 810 ILCS Ann. 5/2-607, Uniform Commercial Code Comment 4, at 465 (Smith-Hurd 2022). "Whether sufficient notice has been provided is generally

a question of fact to be determined based upon the particular circumstances of each case." *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 940 (1998). The question can be decided as a matter of law, however, "[w]hen no inference can be drawn from the evidence other than that the notification was unreasonable." *Id.*

¶ 22 Martin Produce argues on appeal that (1) the wholesalers forfeited their notice argument by waiting too long to assert it; (2) the notice requirement in section 2-607(3)(a) does not apply in cases, like this one, that involve a latent defect or a perishable good; and (3) if notice was required, one or both of the exceptions to direct notice recognized by our supreme court in *Connick*, 174 Ill. 2d at 492, applies here. We address each of these arguments in turn.

¶ 23                                             A. Forfeiture

¶ 24 We first consider Martin Produce's contention that the wholesalers forfeited their argument that section 2-607(3)(a) notice was not provided to them. Martin Produce notes that the wholesalers did not raise a lack of notice until they filed their motion for summary judgment in March 2023, four years after they answered Martin Produce's claim for contribution and made no mention of a lack of notice. The wholesalers argue that Martin Produce's earlier claim for contribution cannot be construed as a contingent claim for breach of implied warranty. Their motion for summary judgment based on a lack of notice thus came less than two weeks after Martin Produce first asserted a breach of warranty claim against them in its July 1, 2022, amended third-party complaint. One of the wholesalers, Jack Tuchten, also argues that Martin Produce itself forfeited this forfeiture argument by failing to raise it below in briefing and argument on the motion for summary judgment. We agree that it did. It is well established that "[i]ssues raised for the first time on appeal will not be considered by the reviewing court." *Britamco Underwriters, Inc. v. J.O.C. Enterprises, Inc.*, 252 Ill. App. 3d 96, 99 (1993).

¶ 25    Martin Produce's forfeiture argument also lacks merit. It is true that "[t]he facts constituting any affirmative defense *** must be plainly set forth in the answer or reply." 735 ILCS 5/2-613 (West 2022); see *Edwards v. Lombardi*, 2013 IL App (3d) 120518, ¶ 15 (noting that "[o]rdinarily, if a party fails to plead an affirmative defense, the defense is [forfeited] and cannot be considered even if the evidence suggests the existence of the defense"). But a lack of pre-suit notice in a breach of warranty case is not an affirmative defense. Rather, compliance with section 2-607(3)(a) is an essential element of a claim for breach of warranty that must be alleged in the complaint. See *Maldonado*, 296 Ill. App. 3d at 939; see also 4 Lawrence's Anderson on the Uniform Commercial Code § 2-607:21 (3d ed. 2014) (noting that "[t]he buyer must plead and prove the giving of notice of breach under U.C.C. § 2-607, as the giving of such notice is a condition precedent to the buyer's cause of action"). The wholesalers did not forfeit their ability to raise this challenge.

¶ 26    We turn next to Martin Produce's arguments concerning the application of the notice requirement in this case.

¶ 27         B. Section 2-607(3)(a) Notice in Cases of Perishable Goods or Latent Defects

¶ 28    Martin Produce first invites us to establish a new rule in Illinois by holding that section 2-607(3)(a) notice is not required to assert a breach of warranty claim involving the sort of goods that are at issue in this case. The scope of the exception that Martin Produce seeks is somewhat unclear; it speaks of perishable goods, of situations where the alleged defect is a latent one, and of the exception recognized by New York courts for goods sold for human consumption. Its point in asserting any of these as exceptions to the notice rule, however, is that in each circumstance there will likely be no real opportunity to cure the defect. Martin Produce points out that the allegedly tainted cilantro at issue here was either consumed or destroyed by the time anyone involved was

or could have been made aware of the alleged contamination. Because an inspection would not have revealed the defect, it argues, there was no opportunity for the wholesalers to cure a breach of the warranty of merchantability by substituting nonconforming goods with conforming ones. Martin Produce insists that pre-suit notice should not be required in such cases.

¶ 29    In support of this argument, it cites *Fischer v. Mead Johnson Laboratories*, 341 N.Y.S.2d 257, 258-59 (App. Div. 1973), in which the New York appellate court held that the notice requirement in section 2-607(3)(a) did not apply in a case where the plaintiff alleged that she had been injured by taking the defendant's oral contraceptive. The court concluded that section 2-607(3)(a) had to do "with the sales of goods whose inspection or use discloses a defect of quality, lack of conformance to sample, failure to comply with description, or other cognate circumstances," and that to apply it in situations involving goods sold for human consumption "would strain the rule beyond a breaking point of sense or proportion to its intended object." (Internal quotation marks omitted.) *Id.* at 259.

¶ 30    We are not persuaded, however, that a broad, court-recognized exception for goods that are perishable, have latent defects, or are intended for human consumption is appropriate here. Martin Produce has cited no decision in which an Illinois court followed the reasoning in *Fischer*. And as counsel for the wholesalers pointed out at oral argument in this appeal, the UCC, which expressly applies to "transactions in goods" (810 ILCS 5/2-102 (West 2022)), defines "Goods" broadly to encompass "all things *** which are movable at the time of identification to the contract for sale," including "growing crops" (*id.* § 2-105). See 810 ILCS Ann. 5/2-105, Uniform Commercial Code Comment 1, at 109 (Smith-Hurd 2022) (noting that "[t]he definition of goods is based on the concept of movability" and "[g]rowing crops are included within the definition of goods since they are frequently intended for sale").

¶ 31    This court has also rejected, albeit in a different context, the argument that the inability to cure a defect, on its own, should relieve the buyer of its notice obligation. The plaintiff in *Baja Foods, LLC v. Spartan Surfaces, Inc.*, 2021 IL App (1st) 201156-U, ¶ 38, argued that notice was futile because the defendant in that case could not have cured the problems with its laminated flooring even if it had been timely notified of a defect, where testimony in the case established that the only solution was to remove and completely replace the flooring. We rejected that argument and held that section 2-607(3)(a) still applied. *Id.* ¶ 39.

¶ 32    Martin Produce quotes a well-known treatise on the UCC for the proposition that "[t]he purpose of enabling the seller to cure the defect has significance in a commercial setting but has no significance in a personal injury case because the defect has already caused the harm and the seller can do nothing to remedy the situation." 4 Lawrence's Anderson on the Uniform Commercial Code § 2-607:7 (3d ed. 2014). That source goes on to note, however, that there are other purposes to the notice requirement in section 2-607(3)(a), including "alerting the seller to the need of gathering evidence" and "the general social purpose of informing the manufacturers of the need for making improvements to avoid further injuries." *Id.*

¶ 33    This court has likewise recognized that the notice requirement serves three distinct purposes: (1) "to provide a seller an opportunity to cure a defect and minimize damages," (2) to "protect his ability to investigate a breach and gather evidence," and (3) "to encourage negotiation and settlement." *Maldonado*, 296 Ill. App. 3d at 939. Where personal injury has occurred, "it also informs the seller of a need to make changes in its product to avoid future injuries." *Id.* Thus the fact that section 2-607 notice may not always enable a seller to remedy a latent defect or replace a perishable item in time for it to be used does not mean that such notice would be pointless.

¶ 34    Martin Produce argues that the wholesalers in this case do not state in their briefs how a

failure to give notice hampered them in their efforts to investigate or settle Martin Produce's contribution claim. But it is not the seller's burden to establish prejudice from a lack of notice. As noted above, pre-suit notice is an element of a claim for breach of warranty that is the plaintiff's burden to allege and prove. *Id.* Moreover, as we discuss below, a seller with actual pre-suit knowledge of a purported defect may be able to investigate and explore the settlement of claims. Absent such actual knowledge, however, the failure to give pre-suit notice might well hamper such investigation, even where perishable goods are involved.

¶ 35　We conclude, in sum, that we are not free to ignore the UCC's notice requirement on a case-by-case basis or to carve out our own broad exceptions for whole categories of goods, as Martin Produce would have us do here.

¶ 36　　　　　　　　　　　C. The *Connick* Exceptions

¶ 37　We next consider Martin Produce's argument that one or both of the exceptions to the UCC's notice requirement recognized by our supreme court in *Connick* apply here. When considering the exceptions already recognized by our supreme court, we are inclined to give them a practical, common-sense application. The comments to section 2-607 suggest such an approach. See 810 ILCS Ann. 5/2-607, Uniform Commercial Code Comment 4, at 465 (Smith-Hurd 2022) (observing, with respect to whether notice has been provided within a reasonable time, that the purpose of pre-suit notice is "to defeat commercial bad faith, not to deprive a good faith [buyer] of his remedy").

¶ 38　Section 2-607(3)(a) provides that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 ILCS 5/2-607(3)(a) (West 2022). In *Connick*, 174 Ill. 2d at 492, however, our supreme court recognized two exceptions to this rule. "Direct notice is not required when (1) the

12

seller has actual knowledge of the defect of the particular product" or "(2) the seller is deemed to have been reasonably notified by the filing of the buyer's complaint alleging breach of UCC warranty." *Id.* Martin Produce argues that both of these exceptions apply here and that the circuit court erred when it ultimately granted the wholesalers' motion for summary judgment. We agree that the wholesalers here had actual knowledge of a purported defect years before Martin Produce's claim for breach of implied warranty was filed and thus Martin Produce may well have been excused by the actual knowledge exception recognized in *Connick* from providing pre-suit notice.

¶ 39    The plaintiffs in *Connick* were owners of sport utility vehicles alleged to be unsafe due to an excessive risk of rollover accidents. *Id.* at 487-88. They unsuccessfully argued that the manufacturer had actual knowledge of the defect because it had received unfavorable reports from consumer safety organizations and settled claims with the attorneys general of several states. *Id.* at 493. The *Connick* court concluded that those reports and settlements provided the manufacturer only with knowledge of "problems with a particular product line," and did not inform it that the plaintiffs' *specific* vehicles were alleged to be defective. See *id.* at 493-94. This led the *Connick* court to conclude that the sellers did not have actual knowledge excusing the plaintiffs in that case from providing direct notice of defects affecting their own transactions. *Id.* at 494. Thus, the first exception to the notice requirement was not applicable.

¶ 40    The *Connick* court also found that the second exception did not apply. The court noted that "[o]nly a consumer plaintiff who suffers a personal injury" may satisfy the UCC's notice requirement simply by filing a lawsuit. *Id.* at 495. The court explained that "[t]he reason for this distinction is that where the breach has not resulted in personal injury, the UCC indicates a preference that the breach be cured without a lawsuit." *Id.* Although the plaintiffs in *Connick* were consumers, they alleged only economic losses. See *id.* Thus, the filing of their lawsuit did not

relieve them of their duty to provide direct, pre-suit notice pursuant to UCC section 2-607. *Id.* The wholesalers here had actual knowledge that the specific shipments of cilantro they supplied to Martin Produce, and which were in turn supplied to Carbon, were alleged to have been contaminated by at least June 2018, when the personal injury plaintiffs first brought claims against them. Counsel for Martin Produce suggested at oral argument in this appeal that they had actual knowledge even sooner because Martin Produce issued the wholesalers subpoenas shortly after Martin Produce was brought into the suit, in January 2017. In either case, the wholesalers had the opportunity to investigate and gather evidence regarding those specific transactions long before Martin Produce sued them for breach of warranty. On these facts, we cannot say as a matter of law that the first *Connick* exception—actual knowledge of the defective product—was not satisfied.

¶ 41    The circuit court here initially understood this, and even noted that common sense permitted no contrary conclusion, given the five years of litigation in which the wholesalers had been involved. On reconsideration, however, the court seems to have had trouble squaring that conclusion with application of the *second* exception articulated by the *Connick* court—notice via the filing of a lawsuit. What troubled the circuit court was the limitation noted in *Connick* that the lawsuit-in-lieu-of-notice exception applies only where the plaintiff has brought a claim for breach of implied warranty *and* a claim for personal injury against the merchant from whom they purchased the goods.

¶ 42    The circuit court failed to realize that although the personal injury lawsuit exception did not apply here, the consumer lawsuits could still be the vehicle by which the wholesalers in this case received actual pre-suit knowledge of the defective product. Those earlier personal injury lawsuits clearly informed all sellers within the chain of distribution, including the wholesalers, that the cilantro they sold was considered defective. The circuit court correctly noted that each buyer

was responsible for providing its own notice specific to its own transaction within the chain of distribution. As the wholesalers echo on appeal: Martin Produce "cannot use a third-party's litigation to satisfy the notice requirement for [its] own breach of implied warranty of merchantability claim." But that does not mean that the lawsuit, cannot be the source of the wholesalers' *actual knowledge* that such a claim may be coming.

¶ 43    By naming everyone in the supply chain, the personal injury suits filed here necessarily gave each of those entities actual knowledge that the cilantro *they* sold was alleged to be defective, *i.e.*, that there was "trouble with [a] particular product purchased by a particular buyer." *Id.* at 494. In our view, this is the sort of actual knowledge that will make it unnecessary for a buyer to separately notify its direct seller that a transaction is considered "troublesome and must be watched."

¶ 44    Counsel for the wholesalers insisted at oral argument in this appeal that allegations alone are insufficient to impart a seller with actual knowledge. The wholesalers cite no authority for this proposition, however. We acknowledge that the examples of actual knowledge cited by the *Connick* court are more concrete. In *Malawy v. Richards Manufacturing Co.*, 150 Ill. App. 3d 549, 561-62 (1986), and *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill. App. 3d 1068, 1077 (1982), an employee of the seller observed the malfunctioning product firsthand. And in *Overland Bond & Investment Corp. v. Howard*, 9 Ill. App. 3d 348, 359 (1972), the plaintiff had his vehicle towed to the dealer's lot because the engine had fallen out. Nothing in those cases suggests, however, that knowledge of a defect must be absolute knowledge observed firsthand by the seller. Indeed, we see no reason why actual knowledge must be more definitive than what direct notice of a purported defect would provide, since it is meant to stand in lieu of it. The comments to section 2-607 make clear that direct notice need only alert the seller that the transaction is "troublesome and

15

must be watched" 810 ILCS Ann. 5/2-607, Uniform Commercial Code Comment 4, at 465 (Smith-Hurd 2022).

¶ 45    In sum, we reject the wholesalers' argument that a lawsuit filed by a third-party, though it cannot constitute pre-suit notice under section 2-607 of the UCC for purchasers farther up the chain of supply, can never be what causes a remote seller to have actual knowledge of a defect in the goods at issue. We likewise reject their argument that actual knowledge necessarily means absolute and uncontroverted knowledge of a defect, as opposed to knowledge that a purported defect has been alleged. The circuit court was therefore wrong to conclude as a matter of law that the wholesalers did not have actual knowledge of the defective cilantro in this case, which, if they did, would excuse Martin Produce from providing them with pre-suit notice of its breach of warranty claim. Summary judgment was granted in error.

¶ 46    At oral argument, the wholesalers raised for the first time before this court the argument that any pre-suit knowledge they gained from the personal injury litigation came too late. The UCC pre-suit notice requirement demands that notice be provided to the seller within a reasonable time after the buyer discovers or should have discovered any breach. The wholesalers in this case did not argue in their briefs on appeal that they were drawn into the personal injury suits too late to provide them with actual knowledge within a reasonable time after Martin Produce should have discovered a possible breach. At oral argument they raised this argument, and claimed, for example, that the two-year delay between when the outbreak occurred and when they were first sued denied them the ability to test the cilantro they had growing in the fields.

¶ 47    Whether actual knowledge, like direct notice, must be received within a reasonable time of the buyer's awareness of a breach of warranty claim is an unbriefed question that is simply not before us here. Nor have the parties addressed, if that is a requirement, what is reasonable in this

case, where Martin Produce, as the buyer from the wholesalers, continued to assert that the cilantro that it purchased and resold to Carbon did not breach any warranty. There also appears to be some question as to when the wholesalers gained knowledge. Martin Produce asserted that it issued subpoenas to them months before they were sued that gave them knowledge that the cilantro that they had sold was alleged to be defective. These are questions that may be raised on remand. What we hold here is that summary judgment in favor of the wholesalers because of the lack of notice was improper.

¶ 48                                      IV. CONCLUSION

¶ 49      We reverse the circuit court's grant of summary judgment in favor of the wholesalers based on a lack of section 2-607(a)(3) notice and remand for further proceedings on Martin Produce's breach of warranty claim.

¶ 50      Reversed and remanded.

***Andrews v. Carbon On 26th, LLC***, **2024 IL App (1st) 231369**

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 16-L-6628; the Hon. Daniel J. Kubasiak, Judge, presiding. |
| **Attorneys for Appellant:** | Daniel J. Arnett and Mark R. Bennett, of Arnett Law Group, LLC, of Chicago, for appellant Martin Produce, Inc. |
| **Attorneys for Appellee:** | Nichols J. Parolisi and Phillip G. Litchfield, of Litchfield Cavo LLP, of Chicago, for appellee Jack Tuchten Wholesale Produce, Inc.<br><br>Timothy J. Young and Thomas M. Wolf, of Lewis Brisbois Bisgaard & Smith LLP, of Chicago, for appellee La Galera Produce, Inc. |