**2025 IL 130862**

# IN THE

# SUPREME COURT

# OF

# THE STATE OF ILLINOIS

———————————

(Docket No. 130862, 130863 cons.)

MELISSA ANDREWS v. CARBON ON 26th, LLC, *et al.* (Martin Produce, Inc., Appellee, v. Jack Tuchten Wholesale Produce, Inc., *et al.*, Appellants).

*Opinion filed May 22, 2025.*

JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion.

Chief Justice Theis and Justices Neville, Overstreet, Holder White, Rochford, and O'Brien concurred in the judgment and opinion.

**OPINION**

¶ 1 This appeal arose from a group of personal injury lawsuits filed by restaurant patrons who alleged they became ill from eating contaminated cilantro. As part of the litigation, the distributor who sold the cilantro to the restaurants filed a third-party complaint for contribution against the wholesalers from whom it purchased the cilantro, alleging the wholesalers breached an implied warranty of

merchantability. At issue in this case is whether the distributor satisfied its obligation to notify the wholesalers of its claim of breach of implied warranty of merchantability pursuant to section 2-607(3)(a) of the Uniform Commercial Code (UCC). 810 ILCS 5/2-607(3)(a) (West 2022).

¶ 2    The circuit court of Cook County entered summary judgment in favor of the wholesalers on the notice issue. The appellate court reversed the circuit court's judgment and remanded the cause to the circuit court for further proceedings. 2024 IL App (1st) 231369, ¶¶ 42, 49. For the reasons set forth below, we affirm the appellate court's judgment.

¶ 3                                    BACKGROUND

¶ 4    During the week of June 28, 2016, the Chicago Department of Public Health (CDPH) received multiple reports of individuals who were sickened by Escherichia coli O157:H7 (E. coli) bacteria. After an investigation, the CDPH issued its final report on the foodborne illness. The report concluded that the source of the E. coli outbreak was contaminated cilantro served to patrons at two Chicago restaurants, Carbon on 26th, LLC, and Carbon on Chicago, LLC (collectively, Carbon). During the relevant time period, Carbon purchased cilantro from its distributor, Martin Produce, Inc. (Martin). Martin, in turn, purchased cilantro from two wholesalers, Jack Tuchten Wholesale Produce, Inc. (Tuchten), and La Galera Produce, Inc. (La Galera) (collectively, the wholesalers).

¶ 5    Beginning in July 2016 and continuing into 2017, more than 50 plaintiffs who suffered injuries from the E. coli outbreak filed personal injury complaints in the circuit court of Cook County against Carbon, alleging claims of strict product liability, negligence, and breach of warranty. The plaintiffs included a detailed statement of facts regarding the E. coli outbreak and the CDPH investigation in their pleadings. The personal injury cases were consolidated. On January 19, 2017, the personal injury plaintiffs added claims against Martin. On May 8, 2017, Carbon filed a counterclaim for contribution against Martin.

¶ 6    On October 27, 2017, Carbon filed a third-party complaint alleging strict products liability, negligence, contribution, and breach of express and implied warranties against Martin and several wholesalers, including Tuchten. On March 1,

2018, Carbon amended its third-party complaint to add La Galera as a third-party defendant. On June 13, 2018, the personal injury plaintiffs amended their complaints against Carbon to name all cilantro wholesalers and distributors in the chain of distribution as defendants, including Tuchten and La Galera. Throughout the litigation, Tuchten and La Galera filed timely answers to the complaints filed against them and participated in discovery.

¶ 7     On June 20, 2018, Carbon filed a second amended third-party complaint that abandoned its third-party claims against Tuchten and La Galera, leaving Martin as the sole third-party defendant.

¶ 8     On April 16, 2019, Martin filed the complaint at issue in this appeal, a third-party complaint for contribution against Tuchten and La Galera.[1] In its third-party complaint, Martin cited the Joint Tortfeasor Contribution Act (740 ILCS 100/1 *et seq.* (West 2018)) and alleged, *inter alia*, that the wholesalers breached implied warranties of merchantability.

¶ 9     In March 2020, on the eve of trial, the personal injury plaintiffs reached a global settlement with all defendants. The litigation among Carbon, Martin, and the wholesalers continued after the personal injury plaintiffs settled their complaints.

¶ 10     On June 29, 2022, Carbon amended its counterclaim against Martin, alleging a breach of implied warranty of merchantability and seeking consequential damages for lost revenue and other losses.

¶ 11     On July 1, 2022, Martin filed an answer and affirmative defenses to Carbon's amended counterclaim in which it denied that the cilantro it sold to Carbon was contaminated with E. coli and that it breached an implied warranty of merchantability. In the same pleading, Martin amended its third-party complaint against Tuchten and La Galera for breach of implied warranty of merchantability. Martin alleged, without prejudice to the denials made in its answer, that the cilantro sold by the wholesalers to Martin, and subsequently sold to Carbon, was contaminated with E. coli. It asserted that, if judgment was entered against it in

---

[1]While Martin's third-party complaint initially named five wholesalers as third-party defendants, its subsequent pleadings named only Tuchten and La Galera as third-party defendants.

favor of Carbon, it was entitled to a determination of the extent or degree to which the wholesalers caused or contributed to the damages.

¶ 12       Martin also alleged in its amended third-party complaint that the wholesalers "had actual notice of the alleged defect of the cilantro in or around June 2018 as a result of being named as a defendant in the Individual Complaints." It alleged that, "[a]s a result of the many Individual Complaints, for over three years, all parties have engaged in extensive written and oral discovery." It further alleged that the discovery "resulted in the exchange of numerous documents, including, but not limited to, contracts, purchase orders, invoices, and documents of any kind entered into concerning the sale of cilantro or other leafy green produce, sold and distributed to Martin from January 1 to July 31, 2016, by [Tuchten and La Galera]."

¶ 13       On July 13, 2022, Tuchten and La Galera filed motions for summary judgment, alleging, *inter alia*, that Martin failed to directly notify them of its claim of breach of implied warranty, as required by section 2-607(3)(a) of the UCC. See 820 ILCS 5/2-607(3)(a) (West 2022). That section states that, for breach of implied warranty of merchantability claims, "the buyer must[,] within a reasonable time after he discovers or should have discovered any breach[,] notify the seller of breach or be barred from any remedy." *Id.* Alternatively, Tuchten and La Galera alleged that Martin failed to provide notice within a reasonable period of time after it discovered or should have discovered the alleged breach of warranty.

¶ 14       On March 20, 2023, the circuit court denied the wholesalers' motions for summary judgment, finding that material issues of fact remained on the notice issue. The court's written order stated:

"Tuchten and La Galera argue that Martin never notified them of any alleged E. coli contamination after the cilantro was delivered, or even after the CDPH notified Martin of the outbreak in July 2016. Tuchten and La Galera also argue that Martin cannot rely upon the filing of personal injury complaints as a substitute for Martin's requirement to give notice to Tuchten and La Galera.

The court finds that Martin has established in its response that a genuine issue of fact remains regarding notice that is solely for the jury to decide. An evaluation of whether the notice requirement has been complied with must be based upon the factual setting of each case and the circumstances of the parties

involved. *Wagmeister v. A. H. Robins Co.*, 64 Ill. App. 3d 964, 966 (1978). Whether notice occurred in a reasonable time is a question for the jury. *Id.* Here, the court cannot ignore its common sense, nor ignore the over five years of litigation, to apply Section 2-607 without considering the E. coli outbreak that injured over 70 of Carbon's customers. Logically, Martin would never notify Tuchten or La Galera of a defect that Martin itself denies existed. Additionally, the court finds that reasonable notice of breach of warranty is a question of fact reserved for the trier of fact, and the court finds that Martin has raised genuine issues of material fact as to this notice argument that warrant denial of Tuchten and La Galera's Motions based upon their notice argument."

¶ 15    The wholesalers filed a motion to reconsider the circuit court's order denying summary judgment. On May 16, 2023, the circuit court granted the motion to reconsider, reversed its prior decision, and entered summary judgment in favor of the wholesalers. The court concluded that Martin had failed to provide the wholesalers with direct notice as required by section 2-607(3)(a) of the UCC. The court's order stated:

> "In the [March 20, 2023,] Opinion, the Court found that it 'cannot ignore its common sense nor ignore the over five years of litigation, to apply Section 2-607 without considering the E. coli outbreak that injured over 70 of Carbon's customers.' The court finds that it erroneously failed to hold that the law does not allow a defendant-seller to receive 'reasonable notice' from third-parties via the filing of a lawsuit as the Court suggested. Rather, Illinois law is clear that the defendant-seller must be provided with 'direct notice' from the plaintiff-buyer or that buyer cannot pursue a claim for breach of implied warranty. See *Connick v. Suzuki Motor Co., Ltd.*, 174 Ill. 2d 482, 493 (1997). The court even cited this exact holding from *Connick* in its Opinion, which as a matter of law, requires Martin to give direct notice of a potential breach of warranty to La Galera and Tuchten, and Martin even admitted in its response brief that it did not provide any notice to Third-Party Defendants.

> As such, the Court finds that it erred in essentially creating a new exception to the UCC notice requirements. As Third-Party Defendants argue, Illinois law is clear that only consumer plaintiffs that suffer a personal injury can satisfy their Section 2-607 notice requirement by filing a lawsuit against a seller.

*Connick*, 174 Ill. 2d at 494-95. The court therefore cannot find that Martin is excused from its notice requirements because someone else sued La Galera and Tuchten for breach of implied warranty."

¶ 16    On July 5, 2023, Carbon voluntarily nonsuited its remaining claim against Martin for breach of implied warranty. The circuit court entered an order stating that the case was voluntarily dismissed without prejudice pursuant to section 2-1009 of the Code of Civil Procedure. 735 ILCS 5/2-1009 (West 2022). With that dismissal, all claims brought against all parties in this litigation were resolved, and all prior orders were rendered final and appealable. See *Richter v. Prairie Farms Dairy, Inc.*, 2016 IL 119518, ¶ 39.

¶ 17    Martin filed a timely notice of appeal of the circuit court's May 16, 2023, summary judgment order. The appellate court reversed the circuit court's judgment and remanded the case to the circuit court for further proceedings. 2024 IL App (1st) 231369, ¶ 49. The appellate court held as follows:

> "The circuit court failed to realize that although the personal injury lawsuit exception did not apply here, the consumer lawsuits could still be the vehicle by which the wholesalers in this case received actual presuit knowledge of the defective product. Those earlier personal injury lawsuits clearly informed all sellers within the chain of distribution, including the wholesalers, that the cilantro they sold was considered defective. The circuit court correctly noted that each buyer was responsible for providing its own notice specific to its own transaction within the chain of distribution. As the wholesalers echo on appeal: Martin Produce 'cannot use a third-party's litigation to satisfy the notice requirement for [its] own breach of implied warranty of merchantability claim.' But that does not mean that the lawsuit cannot be the source of the wholesalers' *actual knowledge* that such a claim may be coming.
>
> By naming everyone in the supply chain, the personal injury suits filed here necessarily gave each of those entities actual knowledge that the cilantro *they* sold was alleged to be defective, *i.e.*, that there was 'trouble with [a] particular product purchased by a particular buyer.' [*Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 494 (1996)]. In our view, this is the sort of actual knowledge that will make it unnecessary for a buyer to separately notify its direct seller that a

- 6 -

transaction is considered 'troublesome and must be watched.' " (Emphases in original.) *Id.* ¶¶ 42-43.

¶ 18    This court granted Tuchten and La Galera's petitions for leave to appeal and consolidated the petitions for our review. Ill. S. Ct. R. 315(a) (eff. Dec. 7, 2023).

¶ 19                                    ANALYSIS

¶ 20    On appeal to this court, we review *de novo* the circuit court's order entering summary judgment in favor of the wholesalers. *Chicago Sun-Times v. Cook County Health & Hospitals System*, 2022 IL 127519, ¶ 24. A grant of summary judgment is appropriate where the pleadings, depositions, admissions, and affidavits on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and the moving party is clearly entitled to a judgment as a matter of law. *Id.*; 735 ILCS 5/2-1005 (West 2022). The purpose of a summary judgment motion is not to try an issue of fact but to determine whether a genuine issue of triable fact exists. *Mydlach v. DaimlerChrysler Corp.*, 226 Ill. 2d 307, 311 (2007). Summary judgment is a drastic measure that should be granted "only when the right of the moving party is clear and free from doubt." *Purtill v. Hess*, 111 Ill. 2d 229, 240 (1986).

¶ 21    In this case, the circuit court entered summary judgment in favor of the wholesalers because Martin failed to provide direct notice of its breach of warranty claim as required by section 2-607(3)(a) of the UCC. Section 2-607(3)(a) provides, "[w]here a tender has been accepted[,] *** the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." 810 ILCS 5/2-607 (West 2022). A notification of a breach of warranty claim is sufficient if it informs the seller that "the transaction is still troublesome and must be watched." 810 ILCS Ann. 5/2-607, Uniform Commercial Code Comment 4, at 465 (Smith-Hurd 2009). Section 2-607 applies to both merchant buyers and retail consumers. See *Hebron v. American Isuzu Motors, Inc.*, 60 F.3d 1095, 1097-98 (4th Cir. 1995). The purpose of the notice requirement is to encourage presuit settlement negotiations and allow the seller an opportunity to investigate the facts, gather evidence, and cure the defect. *Maldonado v. Creative Woodworking Concepts, Inc.*, 296 Ill. App. 3d 935, 939 (1998); *Perona v. Volkswagen of America, Inc.*, 276 Ill. App. 3d 609, 617 (1995). Whether the buyer

has provided sufficient notice to the seller is a question of fact that turns on the particular circumstances of each case. *Maldonado*, 296 Ill. App. 3d at 940. The question can be decided by the court as a matter of law, however, "[w]hen no inference can be drawn from the evidence other than that the notification was unreasonable." *Id.*

¶ 22 This court discussed the parameters of the UCC notice requirement in *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996). In that case, the plaintiffs alleged that the Suzuki Samurai sport utility vehicles they had purchased were unsafe because of an excessive rollover risk. *Id.* at 487-88. The plaintiffs filed a class-action complaint for breach of warranty, common-law fraud, and violation of state consumer fraud statutes against the defendants, Suzuki Motor Company and American Suzuki Motor Corporation (collectively, Suzuki). *Id.* One of the issues presented to this court on appeal was whether the plaintiffs' complaint stated a valid claim for breach of warranty, specifically whether the complaint alleged that the plaintiffs notified Suzuki of the breach as required by section 2-607(3)(a) of the UCC. *Id.* at 491-95.

¶ 23 This court stated that the general rule is that a buyer "must *directly* notify the seller of the troublesome nature of the transaction or be barred from recovering for a breach of warranty." (Emphasis added.) *Id.* at 492. We noted two exceptions to the general rule, however. *Id.* First, a buyer can fulfill the notice requirement *without* giving direct notice to the seller where "the seller has actual knowledge of the defect of the particular product." *Id.* (citing *Malawy v. Richards Manufacturing Co.*, 150 Ill. App. 3d 549 (1986)). Second, a consumer buyer who has suffered personal injuries from a defective product can satisfy the notice requirement simply by filing a complaint alleging a breach of warranty against the seller. *Id.* at 492, 494-95 (citing *Perona*, 276 Ill. App. 3d 609).

¶ 24 This court held that the first exception, "actual knowledge of the defect of the particular product," did not apply to the plaintiffs' claims because Suzuki was not aware of the problems with the *specific* vehicles purchased by the plaintiffs. *Id.* at 493-94. While the plaintiffs alleged that Suzuki was aware of safety problems with its Samurai product line through generalized information received from newspapers, magazines, and third parties, they failed to allege that "Suzuki had actual knowledge of the alleged breach of the particular products purchased by the

named plaintiffs in this lawsuit." *Id.* at 494. This court emphasized that, "[w]hile it is unnecessary to list specific claims of breach of warranty in giving notice under section 2-607 [citations], it is essential that the seller be notified that *this particular transaction* is 'troublesome and must be watched.' " (Emphasis in original.) *Id.* at 493 (quoting 810 ILCS Ann. 5/2-607, Uniform Commercial Code Comment 4, at 465 (Smith-Hurd 1993)).

¶ 25    This court also rejected the plaintiffs' contention that the second exception to section 2-607(3)(a) applied to their claims. *Id.* at 494-95. Under Illinois caselaw, only a consumer plaintiff who suffers a personal injury may satisfy the section 2-607 notice requirement by filing a complaint against a seller. *Id.* at 495. "The reason for this distinction is that where the breach has not resulted in personal injury, the UCC indicates a preference that the breach be cured without a lawsuit." *Id.* We held, therefore, that the plaintiffs could not rely on the filing of their complaint to satisfy UCC notice because they did not allege that they suffered any personal injuries from the Samurai's alleged rollover risk. *Id.* Accordingly, because the plaintiffs failed to allege direct notice to Suzuki and neither exception applied, this court held that the plaintiffs' claims for breach of warranty were properly dismissed. *Id.*

¶ 26    In this case, there is no question that Martin did not directly notify the wholesalers of its claim. Nor can Martin rely on the second exception to the direct notice requirement because it is not a consumer plaintiff who suffered personal injuries. Rather, the issue before this court concerns the first *Connick* exception— whether the wholesalers had "actual knowledge" of the alleged product defect, excusing Martin from the requirement to provide direct notice under section 2-607(3)(a).

¶ 27    The appellate court below held that the wholesalers had "actual knowledge of the defect of the particular product" (*id.* at 492) because they learned of the allegedly contaminated cilantro, at the latest, when the personal injury plaintiffs filed suit against them on June 13, 2018. 2024 IL App (1st) 231369, ¶¶ 42-43. We agree that Tuchten and La Galera had actual knowledge of the problems with the cilantro well in advance of Martin filing its third-party complaint on April 16, 2019. At least 10 months before Martin filed its third-party complaint, the wholesalers were apprised of "the trouble with the particular product purchased by a particular

buyer." *Connick*, 174 Ill. 2d at 494. They knew that the specific shipments of cilantro they sold to Martin during the relevant period in 2016 were allegedly contaminated with E. coli, and they knew that the cilantro was the suspected cause of the E. coli outbreak that caused personal injuries to consumers and economic losses to Carbon. This is all the notice that section 2-607 requires. See *Perona*, 276 Ill. App. 3d at 619 ("The buyers do not have to give notice to the seller of a defect if the seller has actual knowledge of a defect.").

¶ 28    The wholesalers argue that they did not have actual knowledge of the product defect in this case because mere allegations in a personal injury complaint are insufficient to confer actual knowledge. We reject that argument. The comments to section 2-607 in the UCC make clear that a buyer's allegations concerning a defective product serve as sufficient notice to the seller. See 810 ILCS 5/2-607, Uniform Commercial Code Comment 4, at 465 (Smith-Hurd 2009) (buyer's notice need only alert the seller that the particular transaction is "troublesome and must be watched" and need not include "a clear statement of all the objections that will be relied on by the buyer"). The wholesalers do not cite any authority for the proposition that actual knowledge requires something more than mere allegations of a defect, nor can they. In *Connick*, we held only that the seller must be "*somehow* apprised of the trouble with the particular product purchased by a particular buyer." (Emphasis added.) *Connick*, 174 Ill. 2d at 494.

¶ 29    The wholesalers also maintain that they had no actual knowledge of the product defect because they did not have the opportunity to personally observe and inspect the defect. In support of their argument, they cite several cases that this court cited in *Connick*, in which the courts held that actual knowledge was obtained from the sellers' observing the defects firsthand. See *id.*; see also *Malawy*, 150 Ill. App. 3d at 561 (hospital had actual knowledge of a defective bone plate after it removed the plate from the plaintiff's leg); *Crest Container Corp. v. R.H. Bishop Co.*, 111 Ill. App. 3d 1068, 1077 (1982) (manufacturer had actual knowledge of defects after its employee personally observed the failures in the heating system); *Overland Bond & Investment Corp. v. Howard*, 9 Ill. App. 3d 348, 359 (1972) (car dealer had actual notice of defects after buyer had his car towed to the dealer's place of business and informed employees that the car was again in need of major repair). The wholesalers are misconstruing these cases. *Malawy*, *Crest Container*, and *Overland Bond* do not stand for the proposition that the actual knowledge exception applies

*only* where the seller observes the defective product. In fact, there is no Illinois caselaw holding, as a matter of law, that a seller must have the opportunity to observe or inspect the defect to have actual knowledge of the defect. Actual knowledge can arise from any number of sources. In this case, before Martin filed its complaint on April 16, 2019, the wholesalers were aware of the buyer, the particular product, the alleged defects, and the specific transactions at issue, based on being named as defendants in the personal injury complaints.[2]

¶ 30    Finally, the wholesalers argue that the appellate court's ruling renders meaningless *Connick*'s second exception that allows only consumer buyers who suffer personal injuries to satisfy the UCC notice requirement by filing a complaint. They argue, "[i]f a buyer that did not suffer personal injuries cannot rely upon the filing of its own complaint as a basis for establishing UCC notice it surely cannot rely on the filing of a complaint by another for establishing UCC notice." This argument confuses the two exceptions outlined in *Connick*, which are independent of one another. The second *Connick* exception means that Martin could not rely on the filing of *its own* complaint to satisfy the notice requirement. In other words, Martin's third-party complaint filed against Tuchten and La Galera on April 16, 2019, did not excuse it from providing direct notice under section 2-607(3)(a). This does not rule out applying the first *Connick* exception, however, because Martin presented evidence that the wholesalers had actual knowledge of the particular transactions at issue because of their involvement in the personal injury litigation that occurred before Martin filed its claim.

¶ 31    We find that, under the totality of the circumstances in this case, the trial court erred in entering summary judgment in favor of the wholesalers based on a lack of notice under section 2-607(3)(a) of the UCC. Therefore, the appellate court's

---

[2]The wholesalers argue in this court that, even if the actual knowledge exception applies, they did not learn of the product defect within a reasonable time after the breach. This argument was raised for the first time at oral argument in the appellate court. 2024 IL App (1st) 231369, ¶¶ 46-47. We find this argument forfeited, and we decline to address it in this appeal. See *Parks v. Kownacki*, 193 Ill. 2d 164, 180 (2000) (questions not raised in the trial court cannot be argued for the first time on appeal).

judgment is affirmed.

¶ 32                                              CONCLUSION

¶ 33        For the foregoing reasons, we affirm the judgment of the appellate court, which reversed the circuit court's judgment and remanded the case for further proceedings on Martin's breach of implied warranty of merchantability complaint against Tuchten and La Galera.

¶ 34        Appellate court judgment affirmed.

¶ 35        Circuit court judgment reversed; cause remanded.