2026 IL App (1st) 250468-U

SECOND DIVISION
June 2, 2026

No. 1-25-0468

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| Janet Drobick, | ) | |
| | ) | Appeal from the Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County, Illinois |
| | ) | |
| v. | ) | No. 2024 M5 76 |
| | ) | |
| Costco Wholesale Corporation, | ) | Hon. Mary Kathleen McHugh, |
| | ) | Judge Presiding |
| Defendant-Appellee. | ) | |

JUSTICE ELLIS delivered the judgment of the court.
Justices McBride and D.B. Walker concurred in the judgment.

**ORDER**

¶ 1     *Held*: Affirmed. Summary judgment in favor of commercial landowner was proper.

¶ 2     Plaintiff Janet Drobick fell in a parking lot near the entrance of a Costco store. She sued defendant Costco Wholesale Corporation for common-law negligence. Costco moved for summary judgment, arguing that it owed no duty to Drobick, as the alleged defect was a quarter-inch deviation in the pavement. Under the "*de minimis*" doctrine, said Costco, the alleged defect was far too small to trigger a common-law duty to repair or warn. The circuit court agreed and entered summary judgment. We agree as well and affirm.

¶ 3     The material facts are largely undisputed and come primarily from Drobick's own deposition testimony. The incident occurred on February 8, 2022, in the parking lot of the Costco

in Orland Park. Drobick was in her late sixties and suffers from multiple sclerosis ("MS"). She visited the store that day with her husband. The weather was winter cold—maybe "20s, 30s," she estimated—but not otherwise inclement; no precipitation, the pavement was dry. Drobick wore a winter coat and "boots with treads."

¶ 4     As best she recalls, Drobick and her husband parked their car in the "handicapped" parking near the entrance, owing to Drobick's MS. As she walked from her car to the store initially, she had no problem walking and saw no issues with the pavement or sidewalk. She had only been inside the store "a couple of minutes" when she realized she had forgotten her grocery list, so she left the store and started back to her car. Her husband did not accompany her.

¶ 5     Returning to her car meant turning left out of the store. Drobick was not pushing a cart, talking on the phone, or looking at her phone. She was "looking straight ahead." She does not recall any people nearby or any other obstructions, like shopping carts, impeding her.

¶ 6     Not long after she left the store, she fell on the pavement of the parking lot. As she put it, "I was walking to the car and I felt something like grab my boot and twirled me around and I slammed to the ground." Her eyeglasses broke in the fall. She looked around, trying to understand what tripped her. She "felt around" the area of her fall and "felt this one part because it broke [her] glasses, too."

¶ 7     She described what she felt as "this itty-bitty hook. I thought it must have caught my boot when I was walking." She described it as a "little thing" in the pavement. She confirmed that she did not trip over it *per se*; rather, she believes it got caught in the "treading" of her boot, "like something got me."

¶ 8     Drobick was asked more than once whether her MS impacted her ability to walk that day:

"Q. Before your fall that we've been talking about, did you have any problems or issues from—with your walking from your MS?

A. No.

Q. Okay.

A. Thank God.

***

Q. Maybe one way I can ask is, do you think any of your—any of your ongoing medical problems that you had before this accident, did they—

A. Contribute?

Q. —to this fall?

A. No.

Q. I think—just to clarify, I think what you're saying about your MS is that, your MS at the time of your fall was not an issue?

A. Right.

Q. Okay.

A. Thank God. Thank God."

¶ 9    Though he did not witness the incident, Drobick's husband Kevin agreed, as well, that his wife was "not having any issues with her MS" on the day she fell.

¶ 10    The only person who measured the unevenness in the pavement where Drobick fell was a Costco manager named Justin Wulf, who did so the day after the incident. Justin measured the area at its deepest spot, and it was ¼ inch deep. A photo of that measurement was entered into the record. There is no other calculation or measurement of the deviation in the record.

¶ 11    Wulf was the assistant general manager of facility maintenance, which covered both the store's interior and exterior. Wulf would perform inspections of the parking lot and also had about a dozen "cart employees," who would inform him of any potholes or uneven areas of pavement impacting the shopping carts. Another manager named Jonathan Chavarria also inspected the parking lot when outside as well. Neither manager was aware of any uneven pavement in the area at issue before Dobrick's fall.

¶ 12    Wulf testified that Costco never repaired the grade deviation in the pavement. Based on advice from Costco's paving contractor, Wulf did not try to "shave" down the ¼-inch height differential, as that would create the same problem in reverse once the weather (and thus the ground) warmed. By the beginning of March, when the weather had warmed, the pavement had, in fact, leveled out on its own. As he put it: "It was just a matter of earth settling."

¶ 13    Dobrick filed this negligence action, alleging that Costco failed to provide safe passage through its parking lot and allowed a dangerous condition to exist. After discovery, Costco moved for summary judgment, claiming that an unevenness of ¼ inch fell within the "*de minimis*" doctrine, which generally holds that deviations in pavement of less than two inches does not trigger a common-law duty to repair or warn, absent aggravating circumstances.

¶ 14    Drobick responded that this case did, indeed, involve aggravating circumstances, namely that Drobick had difficulty walking with her MS, which a landowner like Costco should have anticipated, especially in the area of the parking lot between the "handicapped" parking and the store's entrance. Drobick attached an affidavit to the response in which she stated that her MS made it harder for her to walk that day, that she shuffled more than strode and was thus more susceptible to even minor deviations in pavement grade. She explained that this method of walking had become so customary to her over the years that she no longer considered it

abnormal, and that was all she meant in her deposition when she testified that her MS did not impact her walking that day—it did not impact her *more than usual*.

¶ 15    Costco moved to strike the affidavit, claiming the law did not permit Drobick to contradict an admission in her deposition to avoid summary judgment. The trial court agreed and struck the affidavit. The court then entered summary judgment for Costco under the *de minimis* doctrine. This appeal followed.

¶ 16    Summary judgment is warranted if there are no disputes of material fact, and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2024); *Andrews v. Carbon on 26th, LLC*, 2025 IL 130862, ¶ 20. We consider all record evidence, including depositions, affidavits, and documentary evidence. *Andrews*, 2025 IL 130862, ¶ 20.

¶ 17    If the movant submits evidence supporting summary judgment in its favor, the burden of production (not persuasion) shifts to the non-movant to set forth some contrary evidence that would arguably entitle it to judgment. *DiFranco v. Fallon*, 2023 IL App (1st) 220785, ¶ 78; *Berke v. Manilow*, 2016 IL App (1st) 150397, ¶ 31. Our review here is *de novo*, meaning we show no deference to the circuit court and decide the question independently. *Piasa Armory, LLC v. Raoul*, 2025 IL 130539, ¶ 12.

¶ 18    The undisputed material facts are that Drobick was walking alone, unencumbered by any impediments like shopping carts or other shoppers, looking straight ahead without distraction, on dry pavement. The highest deviation in grade on the pavement where she fell was a quarter-inch.

¶ 19    Though she takes some issue with that measurement, a quarter-inch deviation does not sound very different from Drobick's own sworn estimate that the deviation was an "itty-bitty" rise in the pavement. The more salient point, however, is that once confronted with competent evidence of a measurement, it was incumbent on Drobick to counter that proof with competent

evidence to the contrary. *Fallon*, 2023 IL App (1st) 220785, ¶ 78. She did not. So that quarter-inch calculation stands unrebutted, as the circuit court noted.

¶ 20    A claim for negligence requires proof of (1) a legal duty the defendant owes the plaintiff; (2) a breach of that duty; and (3) damages proximately resulting from the breach. *Simpkins v. CSX Transportation, Inc.*, 2012 IL 110662, ¶ 14. Costco sought summary judgment on the basis of a lack of duty, citing the "*de minimis*" doctrine in Illinois tort law.

¶ 21    In determining the existence of a duty, the courts consider the foreseeability of injury, the likelihood of injury, the magnitude of the burden of guarding against the injury, and the consequences of placing that burden on defendants. *Id*. ¶ 18.

¶ 22    The "*de minimis*" doctrine flows from the principle that a landowner cannot be the absolute guarantor of the safety of all who traverse its property; the landowner is responsible only for maintaining its premises in a reasonably safe condition. *Morris v. Ingersoll Cutting Tool Co.*, 2013 IL App (2d) 120760, ¶ 11. So *de minimis* deviations in the surface area of a sidewalk or parkway are generally not actionable. *Id*.

¶ 23    To hold otherwise would require endless repairs of the most minute defects on one's property, an unreasonable burden for any landowner, particularly in a midwestern climate marked by massive fluctuation in temperatures. *Id*. ¶ 12; see *Hartung v. Maple Investment & Development Corp.*, 243 Ill. App. 3d 811, 817 (1993). "The size of the defect could change with the temperature, with the seasons, and from year to year." *Gillock v. City of Springfield*, 268 Ill. App. 3d 455, 458 (1994); see *Birck v. City of Quincy*, 241 Ill. App. 3d 119, 123 (1993).

¶ 24    Illinois courts have generally settled on a two-inch deviation in grade as the ceiling for a *de minimis* defect. See *Birck*, 241 Ill. App. 3d at 122 (1993) (deviation of 1-7/8 inches between concrete slabs was *de minimis*); *Morris*, 2013 IL App (2d) 120760, ¶ 13 (1½–inch crack in

loading bay); *Putnam v. Village of Bensenville*, 337 Ill. App. 3d 197, 203-206 (2003) (one-inch deviation); *Hartung,* 243 Ill. App. 3d at 816-17 (¾-inch deviation).

¶ 25     Still, we do not apply these rules robotically. "An unacceptable height variation in one location, such as a busy commercial area where pedestrians must be constantly alert to avoid bumping into one another, may be nonactionable in another area, such as a residential one." *Warner v. City of Chicago*, 72 Ill. 2d 100, 104 (1978).

¶ 26     Drobick emphasizes that the quarter-inch grade differential here was somewhat near the entrance of the Costco store and on the path in the parking lot to the "handicapped" parking spaces. She cites *Harris v. Old Kent Bank*, 315 Ill. App. 3d 894, 902 (2000), where a one-inch deviation in the sidewalk leading to the bank was actionable. We reasoned there that "the sidewalk containing the defect provided the only means of ingress and egress to" the bank, and it was "not unreasonable to presume that a patron exiting the premises might be reviewing the receipts of her transactions, looking for her car keys, or looking toward her car and, therefore, would not discover the sidewalk defect."

¶ 27     On the other hand, as Costco notes, its store and surrounding parking facilities are far more expansive than those in the bank in *Harris*. Indeed, *Harris* made that very point in noting the small area that the bank would have been required to monitor. See *id*. ("this was not a situation similar to that of a municipality or shopping center where the burden of repairing all defects on miles or hundreds of thousands of square feet would be substantial.").

¶ 28     Costco cites *Gleason v. City of Chicago*, 190 Ill. App. 3d 1068, 1069 (1989), where the plaintiff tripped over a ¼–inch crack on the sidewalk by the entrance to a hospital. We found no duty there, noting that landowners "do not have a duty to keep all sidewalks in perfect condition at all times" (*id*.), and given that the plaintiff there could not demonstrate that the sidewalk was

heavily traversed or crowded at the time of her fall. *Id*. at 1070.

¶ 29    In *Hartung*, 243 Ill. App. 3d at 816, the shopping center was not liable as a matter of law for a ¾-inch deviation in the sidewalk on its property. The court noted that "extreme and changeable weather conditions in Illinois are such that slight variations in sidewalk elevations are to be expected; sidewalks cannot be maintained perfectly at all times." *Id*. The court reasoned that "a minor defect such as the one in the present case is one that a person exercising ordinary care could have easily avoided. The defect is one which is routinely encountered in an ordinary sidewalk." *Id*. at 816-17.

¶ 30    We agree with Costco that the court properly entered summary judgment here. We are moved primarily by the tiny size of the grade differential—what Drobick herself described as an "itty-bitty" difference. A quarter-inch depression, while capable of catching a shoe, is so small as to not present a reasonably foreseeable hazard to an individual exercising ordinary care.

¶ 31    But more importantly, even if it is *somewhat* foreseeable that someone could stumble over even a minor deviation as here, the likelihood is so low that it would be unduly burdensome to find a duty here. To hold Costco to a degree of care that eliminated gradations this minor would effectively require Costco to keep its pavement in perfect condition at all times. That is an unreasonable burden, particularly in a midwestern climate where temperatures can vary in a given four-season year by as much as 80 or 90 degrees or more. Indeed, the Costco manager, advised that the condition would self-correct when the weather warmed, saw that very thing happen within the next month after the incident; by March 1, the pavement "was completely leveled out." The court correctly ruled that Costco owed no duty to Drobick.

¶ 32    The judgment of the circuit court is affirmed.

¶ 33    Affirmed.